CREEPING BEAR *v.* STATE.

(*Jackson.*   April Term, 1904.)

1. **WITNESSES.** Hostility or partiality shown by cross-examination or by independent testimony.

The friendliness or unfriendliness of a witness, his partiality for one party or his hostility to the other, may be proved by cross-examination of the witness, or independently by witnesses called for that purpose, in order that the jury may judge of his credibility and the trustworthiness of his testimony.

Cases cited and approved: Attorney-General v. Hitchcock, 1 Exchequer, 90; State v. McKendry, 100 Iowa, 83; State v. Trombly, 60 N. H., 491; Commonwealth v. Byron, 14 Gray, 31; Brewer v. Cassby, 11 Gray, 529; People v. Casey, 72 N. Y., 393; Martin v. Fanteau, 29 N. H., 195; Colmes v. Winchester, 39 N. H., 13; Summer v. Crawford, 45 N. Y., 416; Collins v. Stevenson, 8 Gray, 438; Day v. Stickney, 140 Allen, 255; Louisiana v. McFarlan, 41 La. Ann., 686; United States v. Schindler, 18 Blatchford, 227.

2. **SAME.** Same. Answer to cross-examination as to hostility or partiality is not conclusive.

The answer of a witness on cross-examination as to his hostility or partiality to the parties to the suit is not conclusive, because the evidence of his feelings towards the parties is relevant and material. (*Post, pp.* 327, 329.)

3. **SAME.** Same. Same. Hostility or partiality shown by conduct and expressions; case in judgment.

The hostility or partiality of a witness may be shown by proving his conduct and expressions in relation to the parties, as, that he followed a party who was circulating a petition asking a pardon for the defendant and requested those to whom it

was presented not to sign it, stating that the deceased was a friend of his, and that the defendant was guilty of a cold-blooded murder and he wanted him hung; and the refusal to admit such testimony is reversible error.

## FROM SHELBY.

Appeal from the Criminal Court of Shelby County.— JOHN T. MOSS, Judge.

HARRISON & ESTES, for Creeping Bear.

ATTORNEY-GENERAL CATES, for the State.

MR. JUSTICE SHIELDS delivered the opinion of the Court.

Creeping Bear, a young Sioux Indian, left in Memphis by a Wild West show, struck G. H. Millard with a tomahawk, which he carried under his blanket, while, as he claims, the latter was insulting, badgering, and assaulting him, upon the streets of the city, from the effects of which, after lingering some two weeks, Millard died.

Plaintiff in error was tried upon an indictment charging him with murder in the first degree, convicted and sentenced to confinement in the penitentiary for fifteen years, which judgment, upon appeal, was reversed by this court, and the case remanded for a new trial. Upon a second trial he was convicted of voluntary manslaugh-

ter, and his punishment fixed at ten years' imprisonment, and he has again brought the case to this court and assigned errors.

Upon the last trial counsel for plaintiff in error cross-examined Isadore Weill, the chief witness for. the State, of the immediate facts attending the homicide and proposed to prove by him for the purpose of discrediting him, that he was the friend of the deceased and greatly prejudiced against the defendant, and that while the case was pending in this court after the first trial, he followed a party who was circulating a petition asking a pardon for the defendant and requested those to whom it was presented not to sign it, stating that the deceased was a friend of his and that the defendant was guilty of a cold-blooded murder and he wanted him hung, the time and place and persons to whom these utterances were made being fixed in the questions asked the witness. This testimony, on objection by the district attorney that it was irrelevant and incompetent, was excluded by the court.

While introducing his evidence, the defendant had J. R. Barber sworn and placed upon the stand as a witness in his behalf, and proposed to prove by him the same facts that he offered to prove by the witness Isadore Weill, when the same objection was again made and sustained.   The defendant after verdict, made a motion for a new trial because of error committed in the exclusion of this testimony, which was overruled, and this action of the trial judge he now assigns as error.

The testimony should have been admitted. It is always competent to prove the friendliness or unfriendliness of a witness, his partiality for one party, or hostility to the other, in order that the jury may judge of his credibility and the trustworthiness of his testimony. It is the experience of trial courts that witnesses are often as much influence in testifying by feelings of friendship or hostility to parties to the case, as by direct pecuniary interest in the result of the trial, and for this reason proof of the relations of the witness to the parties may be shown by proving his conduct and expressions in relation to them, by cross-examination of the witness, or independently by witnesses called for that purpose. In the latter case the best practice is to direct the adverse witness' attention, where conversations and statements are proposed to be proven, to the time and place had or made, and to whom spoken, but this in the discretion of the court and not absolutely necessary, since the evidence is not for the sole purpose of contradiction. The answer of the witness on cross-examination is not conclusive because evidence of his feelings toward the parties is relevant and material.

The law upon the subject is stated in Wharton on Evidence, section 408, as follows: "Relationship, sympathy, personal affection, work upon the perceptive powers of the witnesses more subtly, more effectively in the great body of cases than does pecuniary interest; and it is by no means creditable to the English common law, that it regarded the less honorable influence as so pow-

erful that the interest of a single penny would incapaci-
tate, while it so little appreciated the force of the nob-
ler affections, that in only one case, that of marital re-
lationship, did it recognize their existence.  Now, how-
ever, that all disqualifications are removed, and that
proof of interest goes only to credibility, interests of all
kinds are equally objects of consideration in determin-
ing how far credibility exists.  Credibility, therefore,
so far as it depends upon the capacity for accurate nar-
ration, is not relieved from the obstructions produced
by the old rule, and is determinable by the ordinary
laws of free logical criticism.  The question now is not
whether a witness is to be received, but how far he is to
be believed.    Interest and personal affection, or hostil-
ity, and party sympathy or animosity may be always
shown in order to discredit a witness, and the same ob-
servation may be made as to near relationship."

Mr. Greenleaf, in his work on Evidence, 16th Edition,
section 450, states the rule in these words:  "The par-
tiality of the witness for one party or side, or his pre-
judice against the other side, is always regarded as bear-
ing on the trustworthiness of his testimony.  One way
of showing the existence of such bias in his prior expres-
sions of such feelings.  Thus it is always allowable to in-
quire of the witness for the prosecution, in cross-exami-
nation whether he has not expressed feelings of hostility
towards the prisoner.  The like inquiry may be made in
a civil action; and if the witness denies the fact, he may
be contradicted by other witnesses.  But the use of such

evidence is allowable independently of its effect as a contradiction of the witness. In some courts the limitation is laid down that the details of the quarrel or other exhibition of feeling are not to be gone into. But the phrasing of this limitation varies. The witness may explain his expressions away as not due to real prejudice. Some courts require, in analogy to the principle described, post paragraph 462, that the witness' attention be first called to the alleged utterance before other evidence of it can be offered. Another way of showing the probable existence of such bias, is to prove the witness' relationship with a party by blood or marriage or by illicit intercourse; thus in assumpsit on a promissory note, the execution of which was disputed, it was held material to the issue, to inquire of the subscribing witness, she being a servant of the plaintiff, whether she was not his mistress; so also the pendency of litigation with the opponent may tend to show bias against him."

In *Attorney-General* v. *Hitchcock*, 1 Exchequer, 90, a leading case upon this question, Pollack, C. B. says: It is certainly allowable to ask a witness in what manner he stands affected towards the opposite party in the case, and whether he does not stand in such relation to that person as is likely to make him have a prejudiced state of mind, and whether he has not used expressions supporting this view. If he denies this, you may give evidence, as to what he has said, not with a view of having direct effect on the issue, but to show it is the state

of mind of that witness, in order that the jury may exercise their powers as to how far he is to be believed."

In the case of *State* v. *McKendry*, 100 Iowa, 82, it was claimed that the defendant's mother attempted to bribe the county attorney to fix the papers so that her son might escape. When asked concerning this by the State on cross-examination, she denied it. The State was permitted to contradict the witness by direct evidence; and it was held not to be error. It is there said: "The county attorney was permitted over the defendant's objection, to testify that the defendant's mother attempted to bribe him and induce him to so fix the papers that her son might get out. The objection was that the evidence was irrelevant and incompetent and that the State was bound by the evidence of the mother and cannot contradict it as to irrelevant matter called out by it. It may be conceded to be the general rule that when a witness is cross-examined on a matter collateral to the issue, his answer cannot thereafter be contradicted by the one drawing out such collateral matter. The matter inquired about in this case and as to which it was sought to contradict the mother of the defendant was not irrelevant or immaterial. Surely it is competent to show under such circumstances that the witness had fraudulently attempted to bribe the prosecuting officer, and thus to interfere with the criminal law. Such a fact may be shown in contradiction of the testimony of the witness drawn out by the State on cross-examination. It is said in Brandner on Evidence, page 20, ch. 2, section 18: "It

is not collateral, but relevant to the main issue to inquire into the motives of a witness and a party who examined him in regard to them is not bound by his answers, but may contradict them."

Other cases holding that the partiality or hostility of witnesses to parties to the case on trial may be shown by cross-examination, or independent testimony, for the purpose of discrediting the witnesses are: *State* v. *Trombly,* 60 N. H., 491; *Commonwealth* v. *Byron,* 14 Gray, 31; *Brewer* v. *Cassby,* 11 Gray, 529; *People* v. *Casey,* 72 N. Y., 393; *Martin* v. *Fanteau,* 29 N. H., 195; *Colmes* v. *Winchester,* 39 N. H., 13; *Summer* v. *Crawford,* 45 N. Y., 416; *Collins* v. *Stevenson,* 8 Gray, 438; *Day* v. *Stickney,* 140 Allen, 255; *Louisiana* v. *McFarlan* 41 La. Ann., 686; *United States* v. *Schindler,* 18 Blatchford, 227.

These authorities are so conclusive of the question that further comment is unnecessary. The witness Weill was one of two witnesses offered by the State to prove the immediate facts of the homicide, and the testimony given by him was in direct conflict with that of the defendant and very damaging, and it was of the utmost importance to the defendant to discredit him in any legitimate way allowed by law.

The facts proposed to be proven clearly showed that the witness had a strong friendship for the deceased and bitter enmity towards the defendant, and would naturally be predisposed to suppress the aggressive acts of the deceased toward the defendant and mis-

Creeping Bear's Case.

represent the conduct of the latter. The plaintiff in error was entitled to this testimony, and the exclusion of it clearly prejudiced his defense and is reversible error.

Other assignments of error, disposed of orally, were also sustained, the judgment reversed and the case remanded to the criminal court of Shelby county for a new trial.