**STATE of Tennessee, Appellee,**

v.

**James G. WINGARD, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Sept. 19, 1994.

---

Lanny R. Norris, Norris, Bush and Byrd, Elizabethton, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Ruth A. Thompson, Asst. Atty. Gen., Nashville, Kenneth C. Baldwin, Asst. Dist. Atty. Gen., First Judicial Dist., Elizabethton, for appellee.

## OPINION

WADE, Judge.

The defendant, James G. Wingard, appeals from his conviction for felony escape. The trial court imposed a Range II sentence of three years to be served consecutively to his prior sentences.

On appeal, the defendant presents the following issues for our review:

(1) whether the trial court should have allowed as evidence what occurred after his arrest for escape;

(2) whether the trial court erred by allowing his prior felony convictions as evidence; by failing to properly instruct the jury as to the convictions; and by failing to grant a mistrial based upon the introduction of this evidence;

(3) whether it was error to introduce evidence of the defendant's Turney Center records;

(4) whether the trial court should have allowed the defendant to prove that he was scheduled for a parole hearing; and

(5) whether the trial court erred by allowing a lay witness to give opinion testimony.

We find error, reverse the conviction, and remand for a new trial.

On April 10, 1991, the defendant, a prisoner at the Carter County Work Camp (CCWC), helped clear a right of way as part of a six-man work crew assigned to Officer Rick Holtsclaw. At approximately 10:45 A.M., Officer Holtsclaw, who was unarmed, reported to camp officials that his crew was on the job.

The defendant, a "minimum direct inmate," was required to be within the officer's sight at all times while outside the facility, even when going to the restroom. By comparison, trusties may be out of view for as much as 20 minutes. At 10:53 A.M., Officer Holtsclaw noticed that the defendant was not among the work crew. After a brief search, the officer saw the defendant "walking briskly" down Buck Mountain Road approximately 200 to 250 yards away. He yelled to the defendant three or four times but received no response. He last saw the defendant, who was wearing a green, army-type jacket and blue TDOC issue pants, about 300 to 350 yards away.

Officer Holtsclaw placed his remaining crew in a van and notified the CCWC of the escape. Corporal Chucky Holden, in charge of the search, strategically placed officers around the area as lookouts while they waited for tracking dogs from Northeast Correctional Center. At about 12:10 P.M., Officer Tim Stallard saw the defendant in the Buck Mountain area, apprehended him without incident, and called for the other officers. The defendant had a large pack of cheese and a candy bar. He wore a combination of TDOC clothes and "free world" clothes which in-

cluded nylon pajama type bottoms, hush puppy-type boots, a green coat, and a toboggan.

The defendant, 47 years old at the time of trial, had been incarcerated for a total of 26 years. He testified that he had experienced some prior problems with Officer Holtsclaw because of what he termed racial slurs and threats. He claimed that he believed he was on trusty status rather than "minimum" status and thus could go unsupervised outside of view in order to "take a potty." He said that when he returned to the work site some 24 minutes after departing, no one was there and the van was gone. The defendant testified that he waited at the site for over an hour before getting up to exercise his legs. He denied wearing any "free world" clothing or possessing food at the time he was found. He stated that he was charged with escape only because of his tendency to file lawsuits challenging the prison system. He claimed that officials waited for two hours after his return to the CCWC before formal charges were made.

In rebuttal, Warden Harold Smith testified that the defendant's reclassification records showed that he had not been on trusty status. Officer Holtsclaw stated that he had never had any confrontation with the defendant and that he had not made racial slurs while out with his work crew. John Peters, Carter County Sheriff's Deputy, testified that the defendant was booked at the Carter County Jail at 1:25 P.M., a little over an hour after he was found.

## I

The defendant first claims that the exclusion of any evidence about either the beatings he allegedly received from local authorities after the alleged escape or a related pending civil rights lawsuit violated the Tennessee Rules of Evidence and the defendant's right of confrontation under the Sixth Amendment.

█ Rule 616 of the Tennessee Rules of Evidence provides as follows:

> A party may offer evidence by cross-examination, extrinsic evidence, or both, that a witness is biased in favor of or prejudiced against a party or another witness.

The state concedes that the trial court erred in excluding this evidence. We agree. Any "feelings that a witness has with regard to a party or issue are an important factor for the trier of fact to consider in assessing the weight to be given to the witness' testimony." *State v. Williams*, 827 S.W.2d 804, 808 (Tenn. Crim.App.1991); *see Creeping Bear v. State*, 113 Tenn. 322, 87 S.W. 653 (1905). Whether his allegations were credible or not, the defendant had the right to present evidence about the pending lawsuit for the alleged beating, as tending to demonstrate the bias or prejudice of state witnesses. *See State v. Robert E. Smith*, No. 03C01–9203–CR–00067, 1993 WL 119806 (Tenn.Crim.App., Knoxville, April 15, 1993).

The state does, however, argue that the error was harmless. This claim is based, in part, upon Officer Holtsclaw's assertion that he had never had an altercation with the defendant. The state also points to certain testimony of the defendant:

> I tried to get criminal charges against them for alleged assault, kidnapping and aggravated assault. I tried to get charges to get back because I mugged Rick Holtsclaw. That wasn't no escape. They charged me to cover up their own criminal problem because they got the authority. What they say they figured could go. They've never had nobody like me to fight back and I stand and fight them back.... I fight them back with policies ... and law suits.

*   *   *   *   *   *

> They don't like that in the system, no. But, I use that option.... [W]e have to reach the channel of command which they say file a grievance. I bypass grievance because grievance is a joke at the institution. It's all in their favor. I take them to the Federal Court. That's my next step. But, if it begins to seem to be a threat I will be here trying it for the case other than—do you understand what I'm saying? If I see I can't deal with it as—what they offer us and it's beginning to get out beyond it's limitations to where—won't nobody listen then I just take up on my own and deal with it myself. It don't matter if it cost me (indiscernible) the electric chair

or whatever I decide to do I'm just going to do it.

After the trial court decided to exclude the evidence, the defendant offered proof as follows:

[O]n April the 10th, 1991, approximately ... 12:45, they were four State vans, one State car returned to Miller Road. Warden Smith asked me, "what in the damn hell is you trying to do to me, nigger?" I ... replied, "what did I do?" He ... said, "Corporal ... Rick Holtsclaw, I personally want to handcuff and leg iron Mr. Wingard my damn self." After he subdued me I was placed in the State van. Rick Holtsclaw was setting beside me. Timothy Stallard was in the second seat. Earl Smith was in the passenger side and— Corporal Holden was the driver....

\* \* \* \* \* \*

I was carried to the end of Miller Road.

\* \* \* \* \* \*

After arriving at the area I was pulled from the State van by Warden Harold Smith, called nigger, (indiscernible), kicked all in my butt. About two or three minutes later I was escorted about sixty to sixty-five yards deeper up in the woods through a gate where there was a little red (indiscernible) thing. After I arrived there Warden Smith pushed me to my knee and told me—and replied to Corporal Holden to give him that damn pistol he was going to—he said, "I should have killed you and blowed (slang) your brains out and buried you in the nigger cemetery." About two or three seconds then I was pulled by my neck by Warden Harold Smith, escorted back to the van by ... B.J. Potter and Corporal Holden, kneed and kicked in my butt, (indiscernible) after arriving to the van I was (indiscernible) slapped, placed in the van, returned to Carter County Work Camp. Two hours later was taken to Carter County Jail to be booked for alleged escape.

The defendant was permitted to testify generally to the reasons he believed the state's witnesses were biased. Yet the limitations placed on his testimony cannot necessarily be categorized as harmless. In *State*

*v. Cook,* 816 S.W.2d 322, 326 (Tenn.1991), our supreme court discussed the proper guidelines to be used in determining whether any errors are harmless:

Errors not rising to the level of constitutional rights deprivations are judged for harm, or prejudice, under these two rules:

*Rule 52(a) Tenn.R.Crim.P.* defines harmless error as follows:

(a) *Harmless Error.* No judgment of conviction shall be reversed on appeal except for errors which affirmatively appear to have affected the result of the trial on the merits.

Rule 36(b) T.R.A.P. provides:

(b) *Effect of Error.* A final judgment from which relief is available or otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.

■ The defendant's offer of proof conveyed a completely different version of the events surrounding his alleged escape from that presented by the state. And, while this version may have been lacking in credibility, the trial court's failure to allow the defendant to make his claims deprived the jury of the theory of defense. In our view, the jury should have been permitted to consider this evidence and any allegations of bias in weighing the credibility of the witnesses and their testimony. And, because of other errors during the course of the trial, we cannot find this error harmless.

## II

Secondly, the defendant questions the admissibility of his prior felony convictions: first degree murder and attempt to commit a felony. The defendant claims that evidence of these crimes should not have been allowed as evidence for any purpose, impeachment or otherwise. Because the convictions were not used by the state to impeach, we find the defendant's argument that the trial court failed to follow the specific procedure set forth in Tennessee Rule of Evidence 609 to be irrelevant. We will thus consider whether

the crimes were generally admissible as substantive evidence.

Felony escape is statutorily defined as follows:

(a) It is unlawful for any person arrested for, charged with, or convicted of an offense to escape from a penal institution, as defined in § 39–16–601.

(b) A violation of this section is:

    *     *     *     *     *     *

(2) A Class E felony if the person was being held for a felony.

Tenn.Code Ann. § 39–16–605(a) and (b). The defendant argues that the state only had to prove that he was being held on a felony and that the specific nature of the felony was not material. Even if material, he argues, the prejudicial effect of the crimes outweighed their probative value. *See* Tenn. R.Evid. 404(b). The state counters that the evidence was admissible as an element of the offense.

Our statutory provisions make incarceration for a felony charge or conviction an essential element of the offense of felony escape. *See* Tenn.Code Ann. § 39–16–605; *State v. Mansell,* 713 S.W.2d 330, 331 (Tenn. Crim.App.1986). In prosecutions for escape, this court has held that "it is proper to allow evidence to show an accused's prior convictions which resulted in his confinement," even when the prior convictions are for violent offenses such as robbery or murder. *State v. Blackmon,* 701 S.W.2d 228, 232 (Tenn.Crim.App.1985). Proof "material to the issue under investigation is never rendered incompetent because it shows the defendant has committed other crimes." *Lacey v. State,* 506 S.W.2d 809, 811 (Tenn.Crim. App.1974).

Here, the defendant argues that the admissibility of the specific nature of the prior felonies should have depended upon a balancing of the probative value against the prejudicial effect. He also claims that the trial court should have declared a mistrial after the state referred to the specific convictions during the reading of the indictment. As an alternative, the defendant claims that the trial court should have provided limiting instructions on the value of the evidence.

This court has ruled, however, that in order to prove that the defendant was confined on a felony charge the state should prove (1) the circumstances of the defendant's arrest; (2) the circumstances of the defendant's confinement; and (3) the charge against the defendant. *State v. Mansell,* 713 S.W.2d at 331. In *State v. Smith,* 644 S.W.2d 700 (Tenn.Crim.App.1982), the defendant challenged the trial court's denial of a motion to require the state to stipulate to the fact that the defendant was serving a felony sentence. The defendant cited *State v. Banks,* 564 S.W.2d 947, 951 (Tenn.1978), the ruling which served as the model for Tenn.R.Evid. 403, for the proposition that relevant evidence could be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. 644 S.W.2d at 701. Our court, however, determined that the *Banks* decision was "not applicable when the proof offered is to establish an essential element of the crime for which a defendant is being tried." *Id.*

These cases predate the passage of the Tennessee Rules of Evidence effective January 1, 1990. Now, Rule 404(b) governs the admissibility of prior convictions:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

In a recent decision, our supreme court has spoken on the issue of admissibility of prior convictions:

[I]f evidence that the defendant has committed a crime separate and distinct from the one on trial is relevant to some matter

actually in issue in the case on trial, and if its probative value as evidence is not outweighed by its prejudicial effect upon the defendant, then such evidence may be properly admitted.

*State v. Michael Wayne Howell,* 868 S.W.2d 238, 254 (Tenn.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994). In *Howell,* the court applied the balancing test to determine whether the convictions were admissible for purposes other than to prove character, i.e., on the issues of identity and flight of the defendant. The convictions were not an essential element of the offense.

Here, the prior conviction was an element of the offense. In this unique situation, the probative value of an essential element of the offense would almost always outweigh any potential prejudice under Rule 404(b). Thus, this specific nature of the offense was admissible.

■ The trial court summarily determined that the evidence would be admitted. When the defense asked for jury instructions explaining that proof of the prior felony was admissible to establish the elements of the offense only and for no other purpose, the trial court denied the request. In our view, the evidence of a first degree murder conviction prejudiced the defendant—even if that prejudice was outweighed by the probative value. Under such circumstances, the trial courts should take pains to place the value of the evidence in proper context. Rule 105 of the Tennessee Rules of Evidence provides, in part, as follows:

> When evidence which is admissible ... for one purpose but not admissible ... for another purpose is admitted, the court upon request shall restrict the evidence to its proper scope and instruct the jury accordingly.

*See, e.g. State v. Howell,* 868 S.W.2d at 255; *Laird v. State,* 565 S.W.2d 38, 40 (Tenn.Crim. App.1978); *Lacey v. State,* 506 S.W.2d 809 (Tenn.Crim.App.1974); *see also* 1 C. Torcia, *Wharton's Criminal Evidence,* § 264 (14th ed. 1985). In our view, the jury should have been instructed that the prior conviction or convictions had been admitted into evidence for the sole purpose of establishing that the defendant had been convicted of a felony—an essential element of the offense—and for no other purpose. It would have been preferable for the jurors to have known that no inferences of guilt could have been drawn by the nature or gravity of the prior offenses.

When reading the indictment to the jury at the beginning of the trial, the state made reference to the defendant's prior convictions. Later, Internal Affairs Officer Don Stinnett testified that the defendant had been convicted of first degree murder and attempt to commit a felony. Although the latter offense resulted from an attempted escape, no reference was made during the trial to any prior escape. That mitigated the degree of prejudice which might necessarily result by the introduction of that particular felony offense. Thus any failure to provide a limiting instruction as to this offense was clearly harmless.

■ The inherent prejudicial effect of the first degree murder conviction presents a more troublesome question. In *Howell,* the issue had been waived for the defendant's failure to request an instruction; yet our supreme court observed the importance of placing some limits on the use of the evidence:

> [T]here is a significant possibility of misuse with testimony about a defendant's commission of other crimes, and limiting instructions are critical in preventing the improper and prejudicial use of proof of other crimes.

*Howell,* 868 S.W.2d at 255. Here, because of the gravity of this particular offense, the defendant specifically requested a limiting instruction. Nonetheless, the trial court failed to establish any guidelines within which the jury might properly consider the value of the evidence. And, while it is difficult to measure the effect of the error, we are satisfied that the omission, in combination with other errors committed during the course of the trial, would warrant a reversal.

### III

Thirdly, the defendant asserts that the introduction of his reclassification records from Turney Center and any related testimony during rebuttal was improper. We disagree.

■ Although the defendant claims these documents did not constitute a "business records" exception to the hearsay rule because Warden Smith was not qualified to testify to the contents of the records, *see* Tenn.R.Evid. 803(6), we find that these records were admissible under the "public records" exception. Rule 803(8) of the Tennessee Rules of Evidence allows for the admission of these records:

Public Records and Reports. Unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness, records, reports, statements, or data compilations in any form of public offices or agencies setting forth the activities of the office or agency or matters observed pursuant to a duty imposed by law as to which matters there was a duty to report, excluding, however, matters observed by police officers and other law enforcement personnel.

This rule allows for the admission of records of public officials acting under an official duty to report accurately. Pursuant to statute, and with certain exceptions not applicable here, inmates' records "shall be open for public inspection" and are therefore public records for purposes of admission. Tenn. Code Ann. § 4–6–143; *see also* Tenn.Code Ann. § 10–7–504. Accordingly, the defendant is not entitled to relief on this basis.

In a related issue, the defendant claims that the state's use of Warden Smith as a rebuttal witness violated Tennessee Rule of Evidence 615:

At the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing. Sequestration shall be effective before voir dire or opening statements if requested. The court shall order all persons not to disclose by any means to excluded witnesses any live testimony or exhibits created in the courtroom by a witness. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by

a party to be essential to the presentation of the party's cause.

Here, defense counsel requested that the rule be applied to Warden Smith when the first state witness was called. The state asserts that Warden Smith was the "prosecutor" and, as such, was entitled to stay in the courtroom as an "essential" person under subsection three (3).

■ At trial, the state admitted that Warden Smith might testify in rebuttal. Rule 615 of the Tennessee Rules of Evidence applied "the rule" for the first time to rebuttal witnesses. "The rule" may be invoked at anytime and is mandatory. *State v. Anthony,* 836 S.W.2d 600 (Tenn.Crim.App.1992); N. Cohen, D. Paine & S. Sheppeard, *Tennessee Law of Evidence,* § 615.3 (2nd ed. 1990). The purpose of the rule is to prevent one witness from hearing the testimony of another and adjusting his testimony accordingly. *State v. Harris,* 839 S.W.2d 54 (Tenn.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993).

■ We do not agree with the state's reliance upon subsection three (3). Pursuant to subsection two (2), however, the state is permitted to designate a representative. *See* N. Cohen, D. Paine S. Sheppeard, *Tennessee Law of Evidence,* § 615.2 (2nd ed. 1990). When applying the similar federal rule of evidence, courts have previously held that such designations may include investigating officers who will be testifying. *See, e.g., United States v. Martin,* 920 F.2d 393, 397 (6th Cir.1990). In our view, Warden Smith, as the chief official at the correctional facility and a participant in the search for the defendant, would qualify as the state's designated representative or "prosecutor" in this case.

■ And, even if the rule had been violated, we would have found the error harmless. The purpose of the warden's testimony was to establish the defendant's security status. Warden Smith's testimony was primarily from the records of the department; thus, he was not likely to have been influenced by any of the prior witnesses. *See, e.g., State v. Sexton,* 724 S.W.2d 371, 374 (Tenn.Crim.App. 1986).

## IV

Next, the defendant argues that the trial court erred when it would not allow the defendant to introduce evidence about his scheduled parole hearing. The defendant contends that this evidence was relevant under Rule 401 of the Tennessee Rules of Evidence and would have shown his lack of motive to escape. In response, the state contends that the mere "potential for parole did not make the determination of the defendant's guilt or innocence on the charge of escape 'more probable or less probable.' "

We agree with the defense. Whether the defendant believed he would soon be paroled was relevant evidence on the issue of motive and the defendant's state of mind. In his offer of proof, the defendant testified as follows:

Mr. Norris: Now, Mr. Wingard, you had a parole date in January of 1991?

Mr. Wingard: That's the first time I ever met the parole was January 2nd, 1991.

Mr. Norris: All right. And, where was that parole hearing held?

Mr. Wingard: At Turney Center in Only, Tennessee.

Mr. Norris: And, what was your classification at that time prior to when you had that parole hearing?

Mr. Wingard: I was minimum direct.

Mr. Norris: And, what was the end result of that parole hearing?

Mr. Wingard: I was declined until 1992 in January.

Mr. Norris: All right. And, were you given a date then when you were to appear back in front of the parole board?

Mr. Wingard: It was sometime in the month of January of 1992.

Mr. Norris: Okay. And, ... were you told anything by the parole board ...

Mr. Wingard: I was ...

Mr. Norris: ... as far as what to expect in January of 1992?

Mr. Wingard: I was told to stay clean, don't get no write ups, don't escape. In the meantime, going to get into work release program—begin the work release

program while I wait for my parole and stay out of trouble ...

Mr. Norris: All right.

Mr. Wingard: ... that they would guarantee me that I would get paroled as soon as I go up.

Mr. Norris: Is that the last contact with the parole board?

Mr. Wingard: That was the last contact I had with the parole board.

■ While certainly not determinative, such evidence, especially in conjunction with the fact that the defendant had already served 26 years in the Department of Corrections, would tend to support the defense theory and was, therefore, relevant. Had the defendant been permitted to testify about this "guaranteed" parole, the state would have had the opportunity to impeach or to rebut the testimony through either parole records or testimony from a witness such as a member of the state parole board. Under these circumstances, and in consideration of the other limitations placed upon the defendant's presentation of evidence, we cannot classify this exclusion of evidence as harmless.

## V

The defendant's final issue is whether the trial court erred by allowing Officer Holtsclaw to give opinion testimony. Tenn. R.Evid. 701. More specifically, Officer Holtsclaw testified that he yelled loud enough for the defendant to hear from some 300 to 350 yards away.

■ A lay witness may offer opinions if they are based on the witness's own observations. State v. Kilburn, 782 S.W.2d 199, 203 (Tenn.Crim.App.1989). Here, the opinion was based upon the witness' observations. His conclusions required no expertise and were within the range of common experience. In our view, there was no error in the admission of this testimony. The jury had been adequately instructed on the weight of the officer's opinion and was able to consider the distance involved.

## CONCLUSION

In summary, we find that the trial court erred in excluding portions of the defendant's evidence concerning his version of the events, the pending civil lawsuit against state witnesses, and his scheduled parole hearing. The trial court also erred in failing to provide a limiting instruction on the use of prior convictions as evidence. In our view, these errors cannot be characterized as harmless.

Accordingly, the judgment is reversed and the cause is remanded for a new trial.

SCOTT, P.J., concurs.

DWYER, J., not participating.