**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT KNOXVILLE**

**SEPTEMBER 1998 SESSION**

**FILED**

**January 6, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **C.C.A. NO. 03C01-9801-CC-00029** |
| Appellee, | ) | |
| | ) | **ANDERSON COUNTY** |
| VS. | ) | |
| | ) | **HON. JAMES B. SCOTT, JR.,** |
| **ROSCOE H. WOODS,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Rape) |

FOR THE APPELLANT:                    FOR THE APPELLEE:


**JERRY SHATTUCK**                     **JOHN KNOX WALKUP**
101 South Main St.                    Attorney General & Reporter
Clinton, TN  37716

                                      **TODD R. KELLEY**
                                      Asst. Attorney General
                                      John Sevier Bldg.
                                      425 Fifth Ave., North
                                      Nashville, TN  37243-0493


                                      **JAMES N. RAMSEY**
                                      District Attorney General


                                      **JAN HICKS**
                                      Asst. District Attorney General
                                      Rm. 127
                                      Anderson County Courthouse
                                      Clinton, TN  37716


OPINION FILED:_____



**AFFIRMED**



**JOHN H. PEAY,**
Judge

# OPINION

A jury convicted the defendant of three counts of raping his daughter. Following a sentencing hearing, the defendant was sentenced to concurrent sentences of eight years on counts one and two and ten years on count three. The defendant now appeals, raising the following issues for review:

I. Whether the evidence is insufficient to support the jury's verdict because there was no evidence to corroborate the victim's version of events and no evidence that the victim told anyone of the abuse, which would corroborate her credibility; and

II. Whether the trial court erred in failing to grant the defendant a new trial, that is:

A. Whether the jury's verdict is contrary to the weight of the evidence;

B. Whether the trial court erred in allowing the victim to testify she had told a friend about the rapes two years after they occurred;

C. Whether the trial court erred in excluding the testimony of Dr. Ira Lew, a psychiatrist who treated the victim, on the basis of psychiatrist/patient privilege under T.C.A. § 24-1-207;

D. Whether the trial court erred in allowing the State to impeach the credibility of defense witness Josh Woods, the victim's twin brother;

E. Whether the trial court erred in allowing the State to impeach Josh Woods' testimony through the rebuttal testimony of Mark Jones;

F. Whether the trial court erred in allowing the State to impeach the credibility of defense witness Paula Woods, the victim's stepmother;

G. Whether the trial court erred in not instructing the jury, as the defense requested, to consider the fact that the victim failed to report the rapes immediately after they occurred; and

H. Whether the jury's verdict was the result of passion, prejudice, or caprice?

Finding no merit to the defendant's arguments, we affirm.

2

In 1989, after the defendant divorced his first wife, he was awarded custody of his two children, the victim J.W.[1] and her twin brother Josh. In 1992, the defendant remarried, and by May 1993, he, J.W., and Josh had moved into their new home with the defendant's new wife, Paula Woods, and her two daughters from a prior marriage. J.W. testified that around midnight one evening in November 1993, the defendant asked her to watch television with him downstairs. According to J.W., he eventually undressed her, performed oral sex on her, and forced her to reciprocate. J.W. also testified that one evening in the spring of 1994, the defendant woke her in her bedroom at night and told her to come downstairs with him to watch television. According to J.W., he placed her on the floor, and the two engaged in mutual oral sex. J.W. further testified that later that spring, the defendant again woke her in her bedroom at night and touched her breasts, stomach, and in between her legs. According to J.W., he then undressed her and performed oral sex on her, but when he attempted to penetrate her, she pushed him off of her.

J.W., who was thirteen years old at the time of these incidents, testified that none of this contact was consensual. Over objection, she also testified she first told a friend of these incidents approximately two years after they occurred. She then told her friend's mother, another friend, and her psychologist. In July 1996, she reported the incidents to the authorities.

The defendant first argues that the evidence is insufficient to support the jury's verdict of guilt on three counts of rape because there was no evidence to corroborate the victim's version of events and no evidence that she told anyone of the abuse soon after it occurred, which the defendant claims would corroborate her

---

[1]Pursuant to the policy of this Court, the name of the minor victim will not be used.

credibility. The defendant was indicted for three counts of rape by sexually penetrating his daughter by means of coercion, in violation of T.C.A. § 39-13-503(a)(1). The victim's testimony described three incidents during which the defendant performed oral sex on her against her will and forced her to reciprocate. Contrary to the defendant's argument, neither the victim's version of events nor her credibility needs to be corroborated in order to be sufficient. Rather, it was the jury's duty, and theirs alone, to weigh the victim's credibility and decide whether the events she described actually occurred. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The jury decided they did. The evidence is sufficient to support that determination.

The remainder of the defendant's arguments are not supported by citations to authority.[2] As such, the arguments are waived. Rules of the Court of Criminal Appeals of Tennessee 10(b); State v. Killebrew, 760 S.W.2d 228, 231 (Tenn. Crim. App. 1988). Even so, we will address why each remaining issue lacks merit.

The defendant argues the trial court should have granted his motion for a new trial, claiming the jury's verdict was against the weight of the evidence because the victim's testimony and credibility were not corroborated. This issue is nothing but a restatement of the defendant's first argument, which we have already concluded lacks merit.

Next, the defendant argues it was error to allow the victim to testify she had told a friend about the rapes two years after they occurred because two years is "well beyond any parameters established by any Tennessee case regarding fresh complaint."

---

[2]Throughout the remainder of his arguments, the defendant does provide four citations---to T.C.A. § 24-1-207; T.C.A. § 63-23-107; State v. Lewis, 803 S.W.2d 260 (Tenn. Crim. App. 1990); and Sumerall v. State, 580 S.W.2d 794 (Tenn. Crim. App. 1978)---but these citations merely represent general authority that does not specifically support the arguments he makes.

4

The State concedes error apparently on this basis, but argues it was harmless because it did not affect the outcome of the trial.

As a general rule, evidence that an adult victim of a sexual crime complained to a third party that the crime occurred is admissible under the fresh complaint doctrine. See, e.g., State v. Kendricks, 891 S.W.2d 597 (Tenn. 1994). The details of the complaint are generally not admissible, unless the adult victim's credibility has first been attacked. Id. at 606. In cases involving a child victim, however, neither the fact the child victim complained to a third party nor the details of that complaint are admissible into evidence under the fresh complaint doctrine. State v. Livingston, 907 S.W.2d 392, 395 (Tenn. 1995). This Court has held that the demarcation line between "adult victim" and "child victim" is age thirteen. State v. Schaller, 975 S.W.2d 313, 320 (Tenn. Crim. App. 1997). But see State v. Robert J. Burton, Sr., No. 02C01-9507-CC-00193, Weakley County (Tenn. Crim. App. filed June 10, 1996, at Knoxville)(treating a thirteen-year-old victim of sexual abuse as a child rather than an adult and thus barring fresh complaint evidence under Livingston).

Even assuming that it was erroneous to admit J.W.'s "fresh complaint" testimony, the defendant is not entitled to a reversal. A review of the record reveals that defense counsel first introduced evidence that J.W. had told a third party about the rapes. On cross-examination of J.W.'s mother, defense counsel asked her whether the first time she became aware of the incidents was when J.W. told her in July 1996. In questions that followed, defense counsel reiterated that J.W. had told her mother about the incidents. This questioning occurred prior to the testimony about which the defendant now complains, i.e., J.W.'s testimony that she told a friend the defendant had raped her. The defendant complains of evidence that J.W. told a third party, her friend, about the

5

rape incidents, but he invited that error by first eliciting similar testimony from another third party, J.W.'s mother. Moreover, testimony that J.W. confided in a friend was merely cumulative to the evidence defense counsel had already elicited from J.W.'s mother. Because of this, J.W.'s testimony that she told her friend about the rapes did not affect the result of the trial. Thus, any error in admitting this testimony was harmless and does not warrant reversal. Tenn. R. Crim. P. 52(a); State v. James David Chatman, 01C01-9501-CC-00024, Montgomery County (Tenn. Crim. App. filed March 25, 1996, at Nashville)(harmless error where fresh complaint evidence was cumulative).

The defendant next argues that the trial court erred in excluding the testimony of Dr. Ira Lew on the basis his testimony was privileged. Dr. Lew, a licensed psychiatrist, had treated J.W. in April 1994 and had written an evaluation report on May 11, 1994. In April 1997, the State subpoenaed Dr. Lew to testify at trial and provided the defense with a copy of Dr. Lew's report. Less than a week prior to trial, the defendant also subpoenaed Dr. Lew. The State did not call Dr. Lew as a witness, but when the defendant attempted to call him, the State invoked, on J.W.'s behalf, her statutory privilege to confidential communications with a psychiatrist. See T.C.A. § 24-1-207 (Supp. 1997).

Section 24-1-207 provides, in pertinent part:

(a) Communications between a patient and a licensed physician when practicing as a psychiatrist in the course of and in connection with a therapeutic counseling relationship regardless of whether the therapy is individual, joint, or group, are privileged in proceedings before judicial and quasi-judicial tribunals. Neither the psychiatrist nor any member of the staff may testify or be compelled to testify as to such communications or otherwise reveal them in such proceedings without consent of the patient except:

(1) In proceedings in which the patient raises the issue of the patient's mental or emotional condition . . . .

6

Id. Here, the defendant claims J.W. put her mental and emotional condition at issue by testifying she did not report the rape incidents immediately after they occurred because she was embarrassed, ashamed, and afraid. We disagree. Feeling emotion in response to a traumatic event does not equate with putting one's mental or emotional condition at issue. Thus, contrary to the defendant's argument, J.W. did not waive her privilege under § 24-1-207(a)(1), and the trial court did not err in excluding Dr. Lew's testimony on this basis. Moreover, even if the trial court had erred, any error would have been harmless, as the testimony the defendant sought to elicit from Dr. Lew---such as the fact J.W. had used alcohol, had been depressed, and had had disciplinary problems with her father--- would have been cumulative to other evidence already presented to the jury. See Tenn. R. Crim. P. 52(a) (only error that affects the result of the trial warrants reversal).

In the next two issues, the defendant argues the trial court erred in allowing the State to impeach the credibility of defense witness Josh Woods, the victim's twin brother. On direct examination, Josh testified that the defendant disciplined J.W. because she would not "follow through" with her school work. Josh also testified that J.W. would confide in him, but she never complained to him that the defendant had sexually abused her. On cross-examination, the State asked Josh whether in October 1995, he had told Mark Jones, a social worker with the Tennessee Department of Human Services (now called "Department of Children's Services"), that the defendant had hit him in the head four times, retrieved a knife from the kitchen, and hit him again when Josh asked him for a cigarette. Over defense objection, Josh testified he told Mr. Jones he was hit only once. The State asked Josh whether he had told Mr. Jones on other occasions that the defendant had said he wanted to "get rid of" Josh, had fired a gun in the family's home and threatened to kill Josh, had threatened to send Josh to a juvenile delinquent facility, and had threatened to "beat [his] head in." Josh denied telling Mr.

7

Jones these things. Instead, Josh testified he had a very good relationship with the defendant and was not afraid the defendant would terminate their relationship if he testified against him.

To further impeach Josh Woods' testimony, the State called Mr. Jones. Defense counsel attempted to invoke, on Josh's behalf, a statutory privilege to confidential communications between clients and certified master social workers. See T.C.A. § 63-23-107 (1997). Because Mr. Jones told the trial court he was not a certified master social worker, the trial court allowed Mr. Jones to testify. On the witness stand, Mr. Jones confirmed that Josh had reported incidents of physical abuse by the defendant. Mr. Jones also testified that on different occasions, Josh had reported that the defendant said he wanted "to get rid of" Josh, had fired a gun from the house and threatened to kill him, and had threatened to send Josh to a juvenile delinquent facility and "beat his head in." The trial court accompanied this testimony with two limiting instructions to the jury, telling them that this evidence was not substantive evidence these events occurred, but rather was for the sole purpose of impeaching Josh's testimony and testing his credibility.

The defendant first takes issue with the trial court allowing the State to cross-examine Josh about statements he made to Mr. Jones. He claims this evidence was irrelevant because the incidents Josh reported occurred two years after the incidents of rape and two years before trial. We disagree. "Bias is an important ground for impeachment." Tenn. R. Evid. 616 cmt. (citing Creeping Bear v. State, 113 Tenn. 322, 87 S.W. 653 (1905)). Evidence of bias is almost always relevant "because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." United States v. Abel, 469 U.S. 45, 52 (1984). Here, the State attempted to elicit testimony from

8

Josh that he was afraid of the defendant because the defendant had threatened and abused him. Through this line of questioning, the State attempted to show that because Josh was afraid of losing a relationship with the defendant, his testimony was biased in the defendant's favor. Even though Josh's testimony on direct examination was of little probative value, the State was entitled to cross-examine him in an attempt to show bias. The line of questioning pursued by the State helped accomplish this purpose and was, therefore, proper evidence of impeachment under Tenn. R. Evid. 616.

The defendant also argues that the trial court erred in allowing the State to present the testimony of Mr. Jones to rebut Josh's testimony. The defendant does not dispute that bias may be proven by extrinsic evidence, as Tenn. R. Evid. 616 expressly provides. Rather, the defendant argues that the statutory privilege provided for in T.C.A. § 63-23-107 "should apply for this social worker [Mr. Jones] as well as a 'certified master social worker' as mentioned in the statute." Section 63-23-107(a) expressly provides that a client's privilege to confidential communications only protects communications the client has with either a "certified master social worker, or an independent practitioner of social work holding a valid certificate or registration." The record here fails to disclose that Mr. Jones qualified as either. Accordingly, the trial court did not err in admitting Mr. Jones' testimony.

Next, the defendant argues that the trial court erred in allowing the State to impeach the credibility of defense witness Paula Woods, the victim's stepmother. On cross-examination, the State asked Paula whether she had told Pam Breeden in June 1996 that the defendant (Paula's husband) had abused her for three years. Over defense objection, Paula initially denied telling Ms. Breeden that, but when asked again, she stated, "We talked. I mean, I cannot - but I never recall saying that for three years.

9

And it was not physical abuse we were talking of." The trial court instructed the jury to consider this evidence only as it related to credibility. On rebuttal, the State called Ms. Breeden, a police officer, to the witness stand. Ms. Breeden confirmed that in June 1996, Paula had told her that the defendant had abused her for three years. Ms. Breeden further confirmed that Paula told her the defendant threatened to accuse Paula of molesting Josh.

Similar to his argument with regard to the impeachment of Josh Woods' testimony, the defendant argues this evidence impeaching Paula Woods was irrelevant because of the timing of when Paula confided in Ms. Breeden, i.e., that Paula disclosed events of abuse to Ms. Breeden over two years after the events alleged in the indictment and more than one year before trial. Again, we disagree. Rule 616 allowed the State to attempt to elicit evidence that would show Paula's testimony was biased in the defendant's favor because the defendant had abused her for several years and she was afraid of him. Moreover, once Paula denied telling Ms. Breeden that the defendant had abused her, the State could introduce Ms. Breeden's testimony to contradict Paula's testimony and show that Paula's testimony might have been influenced by her fear of the defendant. See Graham v. McReynolds, 88 Tenn. 240, 12 S.W. 547, 549 (1889)(extrinsic evidence of bias is properly admitted when the witness denies she was threatened or her testimony influenced by a party's actions). Contrary to the defendant's contention, we do not find the timing of when Paula confided in Ms. Breeden to destroy the relevance of the bias shown.

Next, the defendant argues that the trial court erred in failing to instruct the jury to consider the fact that J.W. failed to report the rapes immediately after they occurred. The record reflects that the defendant did not file a written request for such an

10

instruction and instead orally requested an instruction, but then only after the jury had retired to deliberate. See Tenn. R. Crim. P. 30(a) (providing that a party may make a special request for jury instructions by filing a written request at or before the close of evidence and that the court may, in its discretion, entertain special requests until the jury retires to deliberate). Thus, we find no reversible error. See State v. Mackey, 638 S.W.2d 830, 836 (Tenn. Crim. App. 1982)(no error found where special request was not made in writing).

Finally, the defendant argues that he is entitled to a new trial because the jury's verdict was the result of passion, prejudice, or caprice. His argument is merely a rewording of the defendant's prior argument that the evidence was insufficient because J.W.'s testimony was not corroborated by a "fresh complaint." As we have already determined, this issue lacks merit.

In sum, we find no merit in the defendant's arguments. Accordingly, the judgment of the trial court is affirmed.

_____
JOHN H. PEAY, Judge

CONCUR:

_____
JOSEPH M. TIPTON, Judge

_____
DAVID G. HAYES, Judge

11