IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned On Briefs March 11, 2014

**STATE OF TENNESSEE v. SHIRA JEAN STAFFORD**

**Appeal from the Circuit Court for Jackson County**
**No. 2011-BO-59    John D. Wootten, Jr., Judge**

---

**No. M2013-01319-CCA-R3-CD-Filed June 26, 2014**

---

Appellant, Shira Jean Stafford, was indicted by the Jackson County Grand Jury for preventing or obstructing a law enforcement officer from effecting a stop, frisk, halt, or arrest in violation of Tennessee Code Annotated section 39-16-602. She was convicted by a jury and sentenced to six months, to be served on probation. After the denial of a motion for new trial, she appealed. Appellant challenges the sufficiency of the evidence; the trial court's decision to allow evidence regarding a civil case during the criminal trial; and the trial court's failure to issue a curative instruction to the jury. After a review of the record and applicable authorities, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, and NORMA MCGEE OGLE, JJ., joined.

Thomas H. Bilbrey, Layfayette, Tennessee, for the Appellant, Shira Jean Stafford.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Tom P. Thompson, District Attorney General; Edwin Sadler, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

*Factual Background*

On November 16, 2010, Officer Chris Carter of the Jackson County Sheriff's Department was working as a School Resource Officer at Jackson County Middle School.

At the conclusion of the school day, Officer Carter patrolled the surrounding area. In particular, Officer Carter was on the lookout for students that were reportedly causing trouble in the local cemetery.

Officer Carter turned onto Jennings Creek Highway. He was following a green Firebird. The speed limit on Jennings Creek Highway dropped from fifty-five miles per hour to thirty-five miles per hour. The Firebird disobeyed the lower speed limit and continued to travel at speeds of approximately forty-five to fifty miles per hour. Officer Carter turned on his blue lights and initiated a traffic stop. The driver, Donnie Stafford, supplied his driver's license.

Jacob Stafford and Appellant, the son and wife of Mr. Stafford, respectively, were at home when they heard Mr. Stafford's license tag number announced over the scanner. Jacob and Appellant decided to drive to the scene to make sure Mr. Stafford was alright.

Mr. Stafford suffered from various medical conditions, including cancer, depression, high blood pressure, thyroid problems, back problems, and muscle issues. He was driving on Jennings Creek Highway to go check on his brother-in-law when he was pulled over by Officer Carter.

Officer Carter walked back to his patrol car to complete the speeding citation. At that point, a white van pulled up behind the patrol car. Officer Carter completed the paperwork and exited the patrol car to deliver the citation to Mr. Stafford. Appellant stepped out of the passenger seat of the white van, approached the officer, and began to scream at him. She stated, "I want to know why you have him stopped. That's my husband and I want to check on him." Officer Carter did not recognize Appellant. He asked her to step back inside her vehicle. He was concerned about his safety as well as the safety of everyone on the side of the road because the white van was blocking the view of the blue lights from oncoming traffic. Mr. Stafford saw Appellant and Jacob Stafford stop on the side of the road.

Appellant refused to go back to her van. Instead, she continued to "cuss and holler" and tried to step around Officer Carter to get closer to Mr. Stafford. She pushed the officer three times with her body to try to get past him, all the while claiming that she needed to check on her husband. Officer Carter stated, "Ma'am, I need you to go back to your vehicle." Appellant continued to argue with Officer Carter and refused to comply. Mr. Stafford, on the other hand, said that it was Officer Carter who "took a hold of her, pushed her, and told her to get back in the van." Mr. Stafford insisted that his wife never "laid a hand" on Officer Carter.

At some point during this exchange, Jacob Stafford, the son of Appellant and Mr. Stafford, stepped out of the driver's seat of the van and Mr. Stafford exited the Firebird. At that point, Officer Carter was surrounded by people all standing in the middle of the highway. Officer Carter again asked everyone to go back to their vehicles. Mr. Stafford complied. Appellant and Jacob Stafford did not comply. Officer Carter had no choice but to call for backup.

Appellant started to calm down, walked to the shoulder of the road, and stood beside the patrol car. Officer Carter asked Appellant to provide her identification; she refused. Officer Carter told Appellant she was "under arrest." He asked her to turn around and place her hands behind her back. Appellant tried to walk away. Officer Carter managed to catch her right arm and place handcuffs on Appellant, despite her attempt to jerk her hand away from Officer Carter. Officer Carter placed Appellant in the back of the patrol car. The backup officers arrived after the arrest.

According to Jacob Stafford, Officer Carter pushed Appellant, saying that Mr. Stafford's health was "not his problem." He stated that his mother never shoved or pushed the officer. Instead, he claimed that Officer Carter demanded her identification and when Appellant asked why she should provide her identification, Officer Carter grabbed her arm, pushed her over the van, and arrested Appellant.

Appellant testified at trial that she heard over the scanner that her husband had been pulled over on the way to Whitleyville. She and her son Jacob Stafford drove to the scene and pulled in behind the patrol car. Appellant claimed that she stepped out of the van to inquire about her husband's health. The officer approached and told her to get back in the van. Appellant admitted that she did not comply. She explained to the officer what she was doing and claimed that he replied that was not his problem, pushed her arms, and caused her to "almost fall." Mr. Stafford and Jacob Stafford started to move toward her at that time, and Officer Carter placed his hand on his gun and told them to get back in their vehicles. At that time, Officer Stafford asked for Appellant's identification. Appellant claimed that the officer jerked her arm behind her and arrested her for disorderly conduct. She insisted that she would have left the scene if Officer Carter had informed her that her husband was fine. Appellant claimed that she was bruised on her arms and hands after the incident. She admitted that she filed a million-dollar lawsuit against the county and Officer Jackson.

At the conclusion of the jury trial, Appellant was convicted of violating Tennessee Code Annotated section 39-16-602 which prohibits anyone from preventing or obstructing a traffic stop. She was sentenced to a six-month sentence, to be served on probation. After the denial of a motion for new trial, this appeal ensued.

**ANALYSIS**

*Sufficiency of the Evidence*

Appellant challenges the sufficiency of the evidence. Specifically, she insists that the State failed to prove that Appellant used force against a law enforcement officer or intentionally obstructed the officer's traffic stop. In other words, the State failed to prove that she prevented or obstructed a law enforcement officer from effecting a stop, frisk, halt, or arrest in violation of Tennessee Code Annotated section 39-16-602. She actually claims that because of discrepancies in his testimony, the testimony of the officer was not credible. The State contends that the evidence was sufficient.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994) (citing *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992)). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Appellant was convicted of violating Tennessee Code Annotated section 39-16-602. It provides, in pertinent part:

(a) It is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer, or anyone acting in a law enforcement officer's presence and at the officer's direction, from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another.

T.C.A. § 39-16-602. A person acts intentionally when they have a conscious objective or desire to engage in the conduct or cause the result. T.C.A. § 39-11-302. Force occurs when a person uses physical power or violence. T.C.A. § 39-11-106.

Viewing the evidence in a light most favorable to the State, the proof at trial shows that Appellant acted intentionally when she rode with her son to check on her husband at the traffic stop. When she arrived, she intentionally stepped outside the van and approached Officer Carter. She confronted the officer, screaming at him that it was her "husband and [she] want[ed] to check on him." She intentionally refused to obey Officer Carter's requests to get back into her van, forcing the officer to call for backup. Officer Carter testified that Appellant cursed, screamed, and hollered at him and pushed him three times, using her body as force, in order to try to gain access to her husband. He testified that he felt threatened and was concerned for his safety as well as the safety of Appellant, Mr. Stafford and Jacob Stafford. Moreover, Officer Carter had not yet delivered a citation to Mr. Stafford and the traffic stop was ongoing during Appellant's tirade. As noted by Appellant, the jury heard conflicting testimony from Appellant, Mr. Stafford, and Jacob Stafford. Of course, the jury was free to accredit the testimony of Officer Carter. Again, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *Pruett,* 788 S.W.2d at 561. The evidence was sufficient to show Appellant intentionally obstructed Officer Carter's attempt to effectuate a traffic stop and citation of Appellant's husband. Appellant is not entitled to relief on this issue.

*Admissibility of Evidence of Civil Suit*

Next, Appellant takes issue with the trial court's admission of testimony about a civil case Appellant filed against Jackson County after her arrest. Specifically, Appellant insists that she did not raise any issues so as to open the door to questions about the civil suit. Further, she argues that the State did not provide notice of its intention to discuss the civil suit, and she insists that she would not have testified at trial had she known that the State was going to question her about the civil suit.

At trial, during cross-examination of Appellant, the State asked Appellant about a million-dollar lawsuit that she filed against Jackson County and Officer Carter after her

arrest. Counsel for Appellant objected, arguing that it was a civil matter and was not relevant. The trial court, citing Tennessee Rule of Evidence Rule 616 and *State v. Wingard*, 891 S.W.2d 628 (Tenn. Crim. App. 1994), overruled the objection and allowed the cross-examination about the lawsuit.

The admissibility of relevant evidence is within the sound discretion of the trial court, and the court's ruling on admissibility will not be disturbed on appeal absent a showing of an abuse of that discretion. *State v. Carruthers*, 35 S.W.3d 516, 576-77 (Tenn. 2000); *State v. Van Tran*, 864 S.W.2d 465, 477 (Tenn. 1993); *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978). As our supreme court stated in *Carruthers*, the modern trend is to vest more discretion in the trial court's rulings on admissibility. *Carruthers*, 35 S.W.3d at 577 (citing *Banks*, 564 S.W.2d at 949).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Tenn. R. Evid. 403. Prejudicial evidence is not excluded as a matter of law. *Carruthers*, 35 S.W.3d at 577. The court must still determine the relevance of the visual evidence and weigh its probative value against any undue prejudice. *Id.* The term "undue prejudice" has been defined "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Banks*, 564 S.W.2d at 950-51 (quoting Fed. R. Evid. 403, Advisory Comm. Notes).

Further, Rule 616 of the Tennessee Rules of Evidence provides that "[a] party may offer evidence by cross-examination, extrinsic evidence, or both, that a witness is biased in favor of or prejudiced against a party or another witness." In *Wingard*, the defendant sought to present evidence about his pending civil lawsuit for an alleged beating because the evidence could demonstrate the potential for bias or prejudice of a witness. 891 S.W.2d at 631. This Court determined that pursuant to Rule 616, the trial court committed error by excluding the evidence because "the jury should have been permitted to consider this evidence and any and all allegations of bias in weighing the credibility of the witnesses and their testimony. *Id.* at 632. In this case, where the facts were heavily contested, the admission of information about the pending civil lawsuit was certainly probative and aided the jury in making a determination as to the credibility of the witnesses. The trial court did not abuse its discretion in admitting this testimony.

As part of this issue, Appellant argues that the State failed to provide notice that they would be admitting evidence about the civil suit at trial. Appellant fails to cite any authority

that would require the State to provide notice. Thus, this issue is waived. *See* Tenn. Crim. App. R. 10(b).

*Jury Instructions*

Finally, Appellant argues that the trial court should have issued a curative instruction to the jury to instruct them how to weigh the evidence admitted in regard to the civil suit. The State insists that Appellant waived the issue for failure to include this issue in a motion for new trial or support the issue with legal authority.

Tennessee Rule of Appellate Procedure 3(e) provides, in pertinent part:

[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

Tenn. R. App. P. 3(e).

Additionally, "[a] motion for a new trial shall be in writing or, if made orally in open court, be reduced to writing, within thirty days of the date the order of sentence is entered. The court shall liberally grant motions to amend the motion for new trial until the day of the hearing on the motion for a new trial." Tenn. R. Crim. P. 33(b). Further, a trial court loses jurisdiction with the filing of a notice of appeal. *See State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996). In the case herein, Appellant did not raise these issues in a motion for new trial. Moreover, she failed to supply legal authority for her argument. *See* Tenn. Crim. App. R. 10(b). This issue is waived.

**CONCLUSION**

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JERRY L. SMITH, JUDGE