IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 13, 2003 Session

## STATE OF TENNESSEE v. BILLY J. COFFELT AND LYLE T. VAN ULZEN

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-A-552     Randall Wyatt, Jr., Judge**

**No. M2002-01214-CCA-R3-CD - Filed September 11, 2003**

The Defendants, Billy J. Coffelt and Lyle T. Van Ulzen, were each convicted of one count of felony escape, two counts of aggravated assault, and three counts of especially aggravated kidnapping. The trial court subsequently sentenced both Defendants to life imprisonment without the possibility of parole on each of their especially aggravated kidnapping convictions. The Defendants were each sentenced to two years for their escape convictions, and to six years for each of their aggravated assault convictions. In this direct appeal, both Defendants contend that their convictions for aggravated assault and especially aggravated kidnapping violate due process, relying on State v. Anthony, 817 S.W.2d 299 (Tenn. 1991). Both Defendants also allege error with respect to the trial court's admission of the identification of the felonies for which they were serving time when they escaped, and with respect to their sentences on the kidnapping convictions. Individually, Coffelt challenges the sufficiency of the evidence and the admission of proof concerning two weapons. Coffelt also alleges that the prosecutor's closing argument constituted reversible misconduct. We affirm the Defendants' convictions. We reverse the trial court's finding that the Defendants are repeat violent offenders subject to mandatory sentences of life imprisonment without the possibility of parole, and remand this matter for resentencing on the Defendants' convictions of especially aggravated kidnapping.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part; Reversed in Part; Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Larry Hoover, Nashville, Tennessee, for the appellant, Billy J. Coffelt. Cynthia F. Burnes, Nashville, Tennessee, for the appellant, Lyle T. Van Ulzen.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Sharon Brox, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The State's proof established that three correctional officers were working at Unit I of the Riverbend Maximum Security Institution during the early morning hours of December 27, 1998. Unit I consisted of four "pods" that contained prison cells; each cell housed a single inmate. A central "pod" was used as the common area. Also in the unit were a security office, a visitor's gallery, a control room, and a laundry room. Corporal Barry Asberry was in charge of the unit; he was being assisted by Officers Amorelle Williams and Lona Beshears. The Defendants were two of the inmates under their care and supervision.

At about three a.m., the Defendants were released from their cells to perform some work. For about an hour and a half, they worked together in the visitor's gallery waxing the floor. During this time, Officer Williams oversaw their activities. Corporal Asberry was in the security office, and Officer Beshears was upstairs in the control room. The control room contained the remote electronic devices which opened doors in the unit.

At about 4:30 a.m., the Defendants ceased working on the floor and began to work in the kitchen, preparing breakfasts for those inmates who celebrated Ramadan. At about five o'clock, both Defendants appeared at the security office. At this time, both Corporal Asberry and Officer Williams were in the office. Defendant Van Ulzen accosted Corporal Asberry with a homemade knife known as a "shank." Defendant Coffelt grabbed Officer Williams, pinning her arms behind her back. Officer Williams testified that Van Ulzen held the shank to Corporal Asberry's neck and threatened her with it. The Defendants told the officers that, if they cooperated, they would not be harmed. The Defendants took the officers' radios and keys; Coffelt armed himself with a "stun gun" taken from a drawer. The Defendants removed their leg irons, and then handcuffed Officer Williams' hands behind her back. The Defendants also fastened one of the sets of leg irons around Corporal Asberry's hands.

The Defendants marched the officers to the laundry room, a short distance away. They then had Corporal Asberry radio to Officer Beshears, giving him the code to open the two consecutive doors to the control room. Van Ulzen put on Officer Williams' uniform jacket and covered his head with the hood. Van Ulzen then went upstairs to the control room and opened the first of two doors, which Beshears had unlocked in response to the radio call. Beshears glanced at the security camera and saw the jacket that Van Ulzen was wearing. Thinking that another officer was waiting to be let in the second door, Beshears opened it. Van Ulzen entered the control room and brandished the shank at Beshears. Van Ulzen told Beshears that he would not be hurt if he cooperated.

Van Ulzen escorted Beshears downstairs to the laundry room. The Defendants removed the restraints from Asberry's and Williams' hands and then locked all three officers in the laundry room. The laundry room was locked from the outside and could not be opened from the inside.

The officers heard a lot of noise, and then saw other inmates in the common area. They subsequently saw several inmates, including the Defendants, leaving the unit through the "sally

-2-

port," a pair of doors that led to the outside. At about 5:30 a.m., Officer William Scott Duncan found the three officers in the laundry room. They were subsequently released from the laundry room by Sergeant Staples.

The prison personnel soon discovered that six inmates had escaped. A ladder had been erected at the perimeter fences and pieces of mattresses had been placed over the razor wire topping the fences. All six inmates were captured within thirty-six hours of their escape.

Defendant Van Ulzen testified at trial, emphasizing that he locked the guards in the laundry room in order to protect them from the inmates he subsequently released from their cells. He testified that he used the shank only to convince the guards to cooperate.

Both Defendants were charged with escape while serving a felony sentence; three counts of especially aggravated kidnapping; and three counts of aggravated assault (with a deadly weapon). Van Ulzen pled guilty to the escape charge; he pled not guilty to the remaining counts. Coffelt pled not guilty to all counts. The jury convicted each Defendant of escape, three counts of especially aggravated kidnapping, and two counts of aggravated assault.

## SUFFICIENCY OF THE EVIDENCE

We will first address Defendant Coffelt's contention that the evidence is not sufficient to support his convictions of especially aggravated kidnapping and aggravated assault. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

Coffelt was convicted of two counts of aggravated assault. This crime is committed when the accused intentionally or knowingly causes the victim to reasonably fear imminent bodily injury, by the use or display of a deadly weapon. See Tenn. Code Ann. § 39-13-102(a)(1)(B). In this case, the proof established that Van Ulzen brandished a homemade knife at Amorelle Williams and Barry Asberry. Both of these victims testified that Van Ulzen's actions caused them to be fearful of being hurt. Van Ulzen's actions were calculated: that is, they were intentional or knowing. Thus, the State established all of the elements of aggravated assault beyond a reasonable doubt.

That it was Van Ulzen, rather than Coffelt, who brandished the knife avails Coffelt no relief. Our criminal code provides that "[a] person is criminally responsible for an offense committed by the conduct of another if: . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2). Coffelt assisted in restraining the victims and in confining them to the laundry. Coffelt escaped along with Van Ulzen. Coffelt is criminally responsible for the aggravated assaults committed upon the two victims. This issue is without merit.

Turning now to Coffelt's contention that the evidence is not sufficient to support his convictions of especially aggravated kidnapping, that offense is committed when the accused "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty," and the confinement is accomplished with a deadly weapon. See Tenn. Code Ann. § 39-13-305(a)(1). The proof in this case established that Lona Beshears, Amorelle Williams, and Barry Asberry were each confined by the Defendants within the prison laundry for a period of at least fifteen minutes. This was a substantial interference with their liberty. Moreover, each of the victims was confined after having been accosted with a knife. Although Van Ulzen wielded the knife, Coffelt remains criminally responsible for Van Ulzen's actions in this regard. The evidence is sufficient to support Coffelt's three convictions of especially aggravated kidnapping, and this issue is therefore without merit.

### ANTHONY ISSUE

We will now address the Defendants' contention that their convictions for especially aggravated kidnapping and escape cannot withstand due process scrutiny under our supreme court's holding in State v. Anthony, 817 S.W.2d 299 (Tenn. 1991).

In Anthony, our supreme court addressed "the propriety of a kidnapping conviction where detention of the victim is merely incidental to the commission of another felony, such as robbery or rape." Id. at 300. The court's basis for addressing this concern was not the constitutional protections against double jeopardy, but rather the court's "understanding of the constitutional guarantee of due process." Id. at 306. Thus, the court determined that the propriety of a kidnapping conviction depends on "whether the confinement, movement, or detention [supporting the kidnapping allegations] is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction." Id. The

court further determined that "one method of resolving this question is to ask whether the defendant's conduct 'substantially increased [the] risk of harm over and above that necessarily present in the crime of [the accompanying felony] itself.'" Id.

Our supreme court revisited these concerns in State v. Dixon, 957 S.W.2d 532 (Tenn. 1997). In Dixon, our supreme court made clear that "any restraint in addition to that which is necessary to consummate [the accompanying felony] may support a separate conviction for kidnapping." Id. at 535 (emphasis added). If such additional restraint is present, "the next inquiry is whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." Id.

Initially, we agree with the State that, unlike the crimes of robbery or rape, an escape does not inherently require the restraint, detention, or confinement of anyone. Thus, because no restraint is necessary to accomplish an escape, any restraint used in the commission of an escape "may support a separate conviction for kidnapping." Id. The convictions in this case will therefore pass due process muster so long as the restraint prevented the victims from summoning help, lessened the Defendants' risk of detection, or increased the victims' risk of harm. See id.

We have no difficulty in holding that the Defendants' three convictions for especially aggravated kidnapping are constitutionally sound. The Defendants argue that locking the victims in the laundry did not affect their ability to summon help because, once the Defendants confiscated their keys and radios, they were unable to summon help no matter where they were in the unit. The Defendants make the same argument with respect to reducing their risk of detection: once the victims were relieved of their keys and radios, they had no way of alerting anyone to the escape in progress. Finally, the Defendants contend that they locked the victims in the laundry for the victims' own protection, thereby actually decreasing the victims' risk of harm.

We acknowledge that the victims testified that they each felt safer in the laundry than they would have out amongst the escaping inmates, given that they had no means of protection against an assault. We also acknowledge Defendant Van Ulzen's testimony that he locked the victims in the laundry in order to keep them safe from the other inmates.[1] Clearly, however, the jury did not believe that this was the sole reason that the Defendants locked the victims in the laundry. Moreover, we are unpersuaded that the Defendants' actions in locking the victims in the laundry did not increase their risk of harm. Granted, no harm actually occurred, making Defendant Van Ulzen's subsequent testimony conveniently credible. However, a risk does not have to be realized in order to be created. Had any of the other inmates gotten the keys from Van Ulzen, or otherwise gained access to the laundry, the victims were literally "sitting ducks" with absolutely no way to protect themselves. Thus, under our supreme court's opinion in Dixon, we find this issue to be without merit.

---

[1]The Defendants ignore the central irony of their argument: the only reason that the guards "needed" the "protection" of being locked in the laundry was because the Defendants were releasing violent felons.

## ADMISSION OF PRIOR CONVICTIONS

Both Defendants complain that the trial court erred in admitting proof of the convictions for which they were incarcerated at the time of their escape.[2] Count 1 of the indictment against Coffelt states that he "did intentionally, knowingly, or recklessly escape from Riverbend Maximum Security Institution, having been held there for an arrest, charge, or conviction of assault with intent to commit murder, a felony[.]" Similarly, Count 2 of the indictment alleges that Van Ulzen "did intentionally, knowingly, or recklessly escape from Riverbend Maximum Security Institution, having been held there for an arrest, charge, or conviction of murder, a felony[.]" Over objection on behalf of both Defendants, these counts of the indictment were read to the jury. Later in the trial, again over defense objection, the trial court ruled that the State could put on proof of the felonies referenced in the indictment. However, the State agreed to accept the Defendants' offers of stipulation as to the specific felonies referred to in the indictment.

The Defendants now contend that the trial court should have allowed the State to prove no more than that they were each in prison while serving a sentence for a felony, without specifying the nature of their crimes. The Defendants rely on our supreme court's opinion in State v. James, 81 S.W.3d 751 (Tenn. 2002). In James, our supreme court held

> (1) that the defendant's prior felonies constitute relevant evidence establishing the prior-conviction element of the offense of felony escape; but (2) that when the sole purpose of introducing the defendant's prior convictions is to prove the "prior-conviction" element of the charged offense, and when the defendant offers to stipulate to this element, the probative value of this evidence is, as a matter of law, outweighed by the risk of unfair prejudice under Tennessee Rule of Evidence 404(b).

Id. at 755. James was not decided until more than two years after the Defendants' trial. Prior to James, this Court held that, in proving felony escape, the prior felony conviction was an essential element of the offense and, under those unique circumstances, the probative value of the prior conviction "would almost always outweigh any potential prejudice under Rule 404(b)." State v. Wingard, 891 S.W.2d 628, 634 (Tenn. Crim. App. 1994). Indeed, the trial court in this case relied on Wingard in making its ruling. Were it not for the subsequent James decision, therefore, we would find no error by the trial court in this regard.

However, the James decision overruled Wingard where the defendant offers to stipulate to his or her prior offenses. See 81 S.W.3d at 763 n.7. Thus, we must conclude that the trial court erred in allowing the State to introduce into proof the nature of the felonies for which the Defendants were incarcerated at the time of their escape.

---

[2]Our criminal code provides that "[i]t is unlawful for any person arrested for, charged with, or convicted of an offense to escape from a penal institution[.]" Tenn. Code Ann. § 39-16-605(a). Thus, an element of the offense that must be proved by the State is that the accused was arrested for, charged with, or convicted of a felony when he or she committed the escape.

Such error is subject to harmless error analysis. See James, 81 S.W.3d at 763. That is, the Defendants are not entitled to relief on this basis unless the error complained of "affirmatively appears to have affected the result of the trial on the merits." Tenn. R. Crim. P. 52(a). When examining the effect of an error on a defendant's trial, we evaluate that error in light of all of the other proof introduced at the trial. James, 81 S.W.3d at 763.

In this case, the proof setting forth the Defendants' criminal conduct was uncontroverted and overwhelmingly established the elements of the crimes of which the Defendants were convicted. We have no hesitation concluding that the admission of proof of the specific felonies for which the Defendants were serving sentences at the time of their escapes had no impact whatsoever on the jury's verdict. Accordingly, this issue is without merit.

### ADMISSIBILITY OF TWO KNIVES

The proof established that, in committing these crimes, Van Ulzen utilized a homemade prison knife known as a "shank." After the Defendants escaped Riverbend, searches of the area outside the building which was traversed by the escaping inmates revealed two such instruments. No witness identified either of these shanks as the one having been used by Van Ulzen, although there was testimony that one of them looked "similar" to what Van Ulzen had held. In spite of the lack of positive identification, the trial court allowed the two shanks to be introduced into evidence. Coffelt now claims that the trial court's decision constituted reversible error.

We respectfully disagree. Rulings on the admissibility of evidence based on its relevance are entrusted to the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. See State v. Dubose, 953 S.W.2d 649, 652 (Tenn. 1997). "[A]n appellate court should find an abuse of discretion when it appears that a trial court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997). We find no abuse of discretion in allowing the introduction of the shank identified as being similar to the one used during the commission of the offenses.

Of course, the threshold requirement for the admissibility of evidence is that it be relevant. See Tenn. R. Evid. 402. In this case, one of the elements of the crime of aggravated assault with which the Defendants were charged is that the victims reasonably feared imminent harm. See Tenn. Code Ann. § 39-13-102(a)(1)(B). Also, an element of the crime of especially aggravated kidnapping, with which the Defendants were also charged, is the use or display of a deadly weapon. See id. § 39-13-305(a)(1). Thus, the State was entitled to use demonstrative evidence in order to establish these elements. While admission of the actual shank used would certainly have been "more" relevant, a demonstration of the type of weapon used was certainly appropriate.

Moreover, while we agree with Coffelt that admission of the second shank was irrelevant and needlessly cumulative, we disagree that the trial court's error in this regard constitutes reversible error. As set forth above, a trial court's erroneous admission of evidence will result in a reversal

only if the error affirmatively appears to have affected the verdict on the merits. No such appearance is indicated here. Coffelt is not entitled to relief on this issue.

## PROSECUTORIAL MISCONDUCT

Coffelt argues that he is entitled to a new trial because of statements made during the prosecutor's closing argument. To analyze the prosecutor's argument, however, we must first review the closing argument made by Coffelt's lawyer, to which the prosecutor was responding.

Coffelt's lawyer argued, in part, that

What we're trying or what we wanted to get across to you is just, you know, what the situation was out there, why this escape took place, and what led up to this escape. I think that you would have to agree with me that there was just a real comedy of errors on the part of Riverbend. It's almost a real life version of the old show, Hogan's Heroes, you know, where the inmates kind of did whatever they wanted to do. . . . But, you know, the prison or the people on duty that night just didn't take care of their business. And that's what happened.

In response to this characterization of the events leading up to the Defendants' escape, which the prosecutor described as a defense of contributory negligence, the prosecutor stated the following:

Whether [the guards] were contributorily negligent or not, if I pick up a hitchhiker at night, knowing I shouldn't, you tell your children don't hitchhike and don't pick up hitchhikers, and that hitchhiker shoots me or kills me, then what do you all say, well, you can't punish him. You were stupid enough to, you know, your father was stupid enough to pick this guy up. He got what he deserved. No, that's just what you call being a nice person and some mean person taking advantage of you. And that's what happened in this situation.

Coffelt acknowledges that no objection was made during this portion of the prosecutor's argument, but alleges that the prosecutor's statements constitute "plain error" entitling him to a new trial.

We disagree. As our supreme court has repeatedly noted, "closing argument is subject to the trial court's discretion. Counsel for both the prosecution and the defense should be permitted wide latitude in arguing their cases to the jury. Argument must be temperate, predicated on evidence introduced during the trial, relevant to the issues being tried, and not otherwise improper under the facts or law." State v. Middlebrooks, 995 S.W.2d 550, 557 (Tenn. 1999) (citation omitted). In this case, defense counsel was comparing the guard staff at Riverbend to a bunch of "television comedy" nincompoops. The defense was predicated on a "they asked for it" theory. The State was entitled to rebut this "defense" with an illustration designed to counter the notion. Under the facts and circumstances of this case, the State's rebuttal argument was not improper. This issue is without merit.

**SENTENCING**

The trial court sentenced both Defendants to life imprisonment without the possibility of parole on each of their especially aggravated kidnapping convictions on the basis that each Defendant was a "repeat violent offender." See Tenn. Code Ann. § 40-35-120. Both Defendants now contend that the trial court erred in doing so. We agree.

At the sentencing hearing, the State introduced proof that Van Ulzen had been convicted in 1988 of two counts of second degree murder. The State introduced proof that Coffelt had been convicted of armed robbery in 1983, assault with intent to commit first degree murder with bodily injury in 1985, and robbery with a deadly weapon in 1985. However, the State introduced no proof as to what portion of their sentences for these crimes the Defendants were serving at the time the instant offenses were committed.

The Criminal Sentencing Reform Act of 1989 requires that a "repeat violent offender" be sentenced to life without the possibility of parole upon conviction of a specified violent offense. See Tenn. Code Ann. § 40-35-120(g). Especially aggravated kidnapping is a specified violent offense that will trigger a sentence of life without the possibility of parole upon a finding that the defendant is a repeat violent offender. See id. § 40-35-120(b) - (d). In this case, the trial court determined that Van Ulzen was a repeat violent offender based upon his two prior convictions of second degree murder. The trial court found that Coffelt was a repeat violent offender based upon his prior conviction of assault with intent to commit first degree murder. We agree with the trial court that each of these predicate offenses qualifies as a "violent offense" for the purpose of determining whether a defendant is a repeat violent offender. However, we respectfully disagree with the trial court that these prior offenses satisfy the statutory definition of "prior conviction" so as to trigger a repeat violent offender sentence.

Section 40-35-120(e) states that, "In determining the number of prior convictions a defendant has received: (1) 'Prior conviction' means a defendant serves and is released from a period of incarceration for the commission of an offense or offenses so that a defendant must [have] . . . at least one (1) separate period of incarceration for the commission of a predicate offense . . . before committing [the offense for which the defendant is being sentenced]." Id. § 40-35-120(e)(1)(B) (emphasis added). In this case, the State presented no proof at the sentencing hearing that either of the Defendants had previously served and been released from a separate period of incarceration before committing the instant offenses. Indeed, from what little proof is in the record before us, it appears as though the Defendants were serving the sentences they received on their predicate offenses at the time they committed the instant crimes. Thus, the predicate offenses do not satisfy the narrow definition of "prior conviction" set forth in the statute.

Nor does it assist the State that the Defendants committed the instant crimes while incarcerated. Tennessee Code Annotated Section 40-35-120(e)(2) provides that "[a]ny offense designated as a violent offense pursuant to subsection (b), (c) or (d) that is committed while incarcerated . . . shall be considered as a separate period of incarceration." Had the Defendants committed one of their predicate offenses while incarcerated, we could treat them as having had a

-9-

"separate period of incarceration:" that is, the effect would be to satisfy the requirement of a release from a period of incarceration. That the Defendants committed the <u>instant</u> crimes while incarcerated does not trigger a "separate period of incarceration" for the purposes of satisfying the definition of their <u>prior</u> convictions.

In short, the trial court erred in determining the Defendants to be repeat violent offenders for the purpose of imposing mandatory sentences of life imprisonment without the possibility of parole. Accordingly, we remand this matter to the trial court for a determination of the sentences to be imposed upon the Defendants for each of their convictions of especially aggravated kidnapping.

## CONCLUSION

The Defendants' convictions are affirmed. We vacate the sentences imposed by the trial court with regard to the Defendants' convictions of especially aggravated kidnapping and remand this cause for resentencing for those offenses only.

_____

DAVID H. WELLES, JUDGE