IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 7, 2006 Session

## STATE OF TENNESSEE v. ROBERT A. WILEY, AKA JABO

**Appeal from the Circuit Court for McNairy County**
**No. 1740     Weber McCraw, Judge**

---

**No. W2005-01662-CA-R3-CD  - Filed May 19, 2006**

---

The Defendant, Robert A. Wiley, aka Jabo, was convicted by a McNairy County jury of identity theft, violation of a Motor Vehicle Habitual Offender (MVHO) order, and driving while license cancelled, suspended, or revoked.  For these convictions, the Defendant received an effective three-year sentence as a Range I, standard offender.  In this appeal as of right, the Defendant argues that: (1) the trial court made several errors in instructing the jury, (2) the evidence was insufficient to support his conviction for identity theft, and (3) the trial court committed sentencing errors.  Finding plain error, double jeopardy principles require us to vacate the Defendant's conviction for driving while license cancelled, suspended, or revoked.  The remaining judgments of the trial court are affirmed in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part;
Reversed in Part**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA McGEE OGLE, JJ., joined.

Wayne T. Dewees, Bolivar, Tennessee, for the appellant, Robert A. Wiley.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; and Elizabeth Rice, District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Factual Background

On June 14, 2002, a McNairy County grand jury indicted the Defendant for identity theft, violation of a MVHO order, and driving while license cancelled, suspended, or revoked.  A jury trial was held on November 2, 2004.

The State's first witness was Officer Byron Maxedon of the Selmer Police Department. Officer Maxedon testified that, "midday" June 10, 2003, he was patrolling the "north area" of the City of Selmer, when he encountered the Defendant. According to Officer Maxedon, he passed the Defendant, who was driving a Mercedes-Benz, and recognized the Defendant "through the front windshield of the vehicle." He also recognized the vehicle as belonging to the Defendant. Officer Maxedon testified that he knew the Defendant's driver's license was revoked. Additionally, Officer Maxedon observed that the side windows of the Defendant's vehicle were heavily tinted, and he believed "that [the Defendant's] window tint was in violation under the Tennessee Window Tint Code." Based upon Officer Maxedon's knowledge of the status of the Defendant's driver's license and the window tint violation, he stopped the vehicle.

Officer Maxedon informed the Defendant of the window tint violation and asked him if he had a driver's license. The Defendant produced a license that was issued on November 27, 2002, which stated the Defendant's name as "ROBERT ARRON WILEY JR." However, Officer Maxedon knew the Defendant as "Robert Allen Wiley." The information on the license was otherwise accurate. He then asked the Defendant to exit the vehicle and advised him of his Miranda rights.

Officer Maxedon asked the Defendant to state his social security number, and the Defendant "spit out the social security number of 255 -- I can't remember the whole number without looking at it, but I remember the first part was 255." Officer Maxedon then asked the Defendant where he was born, to which the Defendant replied that he was born in Tennessee. Officer Maxedon inquired of the Defendant, "If you were born in Tennessee, how did you obtain a 255 social security number?" The Defendant had no response.

In order to establish that the Defendant's license was revoked at the time of the stop, the State introduced into evidence a certified copy of the Defendant's Department of Safety Driving Certification and a certified copy of the order declaring the Defendant an habitual offender under the MVHO Act. The State then called Circuit Court Clerk Ronnie Brooks, who testified that, after a search of his records, he found no petition by the Defendant to restore his driving privileges.

Robert Arron Wiley, Jr., testified that he was an engineer and lived in the State of Georgia. Mr. Wiley was shown a Department of Safety Document, which contained the Defendant's picture and identification information. Mr. Wiley testified that the social security number on the document belonged to him. The license the Defendant presented to Officer Maxedon was then passed to Mr. Wiley. Mr. Wiley stated that it was his name on the license but that none of the other identification information was his. According to Mr. Wiley, he had a Tennessee driver's license for approximately ten months in 1988. Mr. Wiley stated that he was in the Army National Guard for about one year and was discharged in 1989. Mr. Wiley testified, "When my separation time came up, I went to the office, signed the papers and as everything was processed, they were just mailed to me." On cross-examination, Mr. Wiley said that he had never met the Defendant, who was black, and that he was white. Additionally, he did not know whether a copy of his discharge had ever been mailed to the Defendant.

The Defendant presented Brian Dickey, McNairy County Register of Deeds, as a witness. Mr. Dickey testified that the Defendant recorded an Army discharge document with his office in 2001. On cross-examination, Mr. Dickey acknowledged that he could not "vouch[] for the authenticity" of the document.

The Defendant then testified on his own behalf. He stated that he was born in McNairy County, had a 9th grade education, and served in the Army National Guard for sixteen years and was discharged in 1989. According to the Defendant, he "went to Adamsville to see what [he] had to do to get [his] license reinstated." He asked an employee of the license office what he would need to obtain a license and, as a result of that conversation, he filled out an application for a license. According to the Defendant, he put the name "Robert A. Wiley" on the application. He also presented a birth certificate, which stated his middle name as "Allen," a tax receipt as proof of residence, and a National Guard discharge. Based upon this information, he was issued the license he presented to Officer Maxedon. Additionally, the Defendant testified that he had never received notice from the State of Tennessee that his license was revoked.

The Defendant testified that, on two prior occasions, he had been stopped by other officers, who looked at the license and let him go. According to the Defendant, he received his National Guard discharge paper in the mail in 1989 but did not examine it closely. He testified that he "put it up" until he recorded it in 2001.

On cross-examination, the Defendant acknowledged that his middle name was "Allen" not "Arron." He testified that he had two or three different names and two different social security numbers. According to the Defendant, these multiple names and social security numbers resulted from the National Guard discharge paper issued to him. He explained that he had two social security numbers because: "Ever since I was born I had one and then when I come [sic] out of the . . . National Guard, I was issued another one." According to the Defendant, the social security number issued to him at birth began with "411." The State then introduced into evidence a "mug shot" of the Defendant, which contained the "411" social security number.

The Defendant admitted that he was a tank operator and not a "basic electricity and electronics avionics repairman" as stated on the discharge paper. The Defendant explained that he did not register the discharge paper until 2001 because: "I just didn't know I had to register it and I just registered it, I mean, you know." The Defendant testified that he had not used the "255" social security number for any other purpose. He stated that he copied the information from the discharge paper in filling out his driver's license application.

Additionally, the Defendant acknowledged that he had signed the 1999 order declaring him an habitual offender. Regarding any court appearance relating to the order, the Defendant stated, "I came down here and talked to a lady concerning that and that was all that was [sic] to it." Moreover, he admitted that he had not petitioned the court to have his license reinstated. On re-direct examination, he stated that, at his court appearance, he was informed he was an habitual offender

and just signed the paper.  In re-cross, he testified that he did not talk with a judge and only spoke with a "lady."

Following the presentation of evidence, the jury found the Defendant guilty of all charges. Thereafter, a sentencing hearing was held on November 10, 2004.  The trial court sentenced the Defendant as a Range I, standard offender to concurrent[1] sentences of three years for identity theft, one year and six months for violation of the MVHO order, and eleven months and twenty-nine days for driving while license cancelled, suspended, or revoked.  As to manner of service, the trial court imposed "CMC after 120 days in jail 1 year CMC then supervised probation."[2]  After hearing testimony about the Defendant's financial situation, the trial court reduced the fines imposed by the jury to "$50.00 per count."  The Defendant filed a motion for new trial, which was denied.  This appeal followed.

## ANALYSIS

### I.  Jury Instructions

The Defendant argues that the trial court erred in its jury instructions in several respects. First, the Defendant submits that the trial court erred by not instructing the jury as to any lesser-included offenses for the crime of identity theft.  Second, the Defendant contends that the trial court failed to give a limiting instruction that a prior conviction could only be used to impeach the Defendant and not as proof that he committed the crime in question.  Third, the Defendant contends that the trial court erred by not charging his defenses.

-----

[1]We note that the trial court did not specify whether the Defendant's sentences were to be served concurrently or consecutively.  Therefore, by operation of law, the Defendant's sentences are concurrent.  Under Tennessee procedure, concurrent sentencing is the baseline or presumptive arrangement of multiple sentences: "Sentences shall be ordered to run concurrently, if the criteria noted in [section 40-35-115](b) are not met, unless consecutive sentences are specifically required by statute or the Tennessee Rules of Criminal Procedure."  Tenn. Code Ann. § 40-35- 115(d) (2003); see also Tenn. R. Crim. P. 32(c)(1) ("Unless it is made to affirmatively appear that the sentences are consecutive, they shall be deemed to be concurrent.").  Moreover, the manner of service indicates that the trial court intended the sentences to be concurrent.

[2]The record is unclear whether the sentence received was probation, to be supervised in the community corrections program, or a community corrections sentence.  Community corrections and probation are not fungible methods of serving an alternative sentence.  State v. Kathyrn White Byrd, No. E2002-00417-CCA-R3-CD, 2003 WL 21276499, at *5 (Tenn. Crim. App., Knoxville, May 29, 2003) (citing State v. Pettus, 986 S.W.2d 540, 544 (Tenn.1999)) ("A review of the language of the relevant statutes reveals a clear distinction between community corrections and probation.").  However, as a condition of probation, a defendant can be placed into a community corrections program. Tenn. Code Ann. § 40-36-106(f).

On the judgment forms, the boxes marked "TDOC," "Probation," and "Community Based Alternative" are all checked.  Because alternative sentences and sentences to the Department of Correction are distinct sentences with different program requirements, different conditions, and distinctly different consequences following revocation, it is important that the correct sentence be noted on the judgment form.  Any conditions, such as a period of incarceration, should be noted in the "special conditions" section of the judgment form.  State v. William George Soller, No. E2003-02970-CCA-R3-CD, 2004 WL 2346024, at *1 n. 1 (Tenn. Crim. App., Knoxville, Oct. 19, 2004), aff'd, 181 S.W.3d 645 (Tenn. 2005).  Our conclusion is that this is a case of probation.

## A. Lesser-Included Offenses

The Defendant's argument in this respect is not clear. The Defendant, in his brief, twice states the issue as, "The Court failed to instruct the jury as to any lesser included offenses to the charge of criminal impersonation." However, in concluding the argument section of his brief on this issue, the issue is phrased as, "The trial court erred in neglecting to instruct the jury as to the lesser included offense of criminal negligence where the [D]efendant, a person with very little formal education or reading skills failed to perceive the risk created by the conduct." The Defendant was charged with and convicted of identity theft, not criminal impersonation. Moreover, criminal negligence is a culpable mental state, not a lesser-included offense. Accordingly, we confine our analysis to whether criminal impersonation is a lesser-included offense of identity theft.

Defendant did not raise the trial court's failure to instruct the jury on any lesser-included offenses in his motion for new trial. Generally, a defendant waives an issue if he fails to include it in his motion for new trial. Tenn. R. App. P. 3(e), 36(a). Additionally, the Defendant has failed to include a transcript of the motion for new trial hearing in the record. It is the duty of the appealing party to prepare an adequate record for appellate review. Tenn. R. App. P. 24(b). "When a party seeks appellate review there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal." State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993).

Furthermore, the Defendant made no written or oral request to the trial court for any lesser-included instructions. In fact, "no special requests" were made by the Defendant. Relying on Tennessee Code Annotated section 40-18-110, the State submits that the Defendant has waived this issue for failure to request the instruction in writing at trial.

Tennessee Code Annotated section 40-18-110, in pertinent part, provides:

> (b) In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any such charge.

> (c) Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, such instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal.

Tenn. Code Ann. § 40-18-110(b), (c). Our supreme court has recently concluded that "Tennessee Code Annotated section 40-18-110(c) does not violate the constitutional right to trial by jury." State v. Robert Page, -- S.W.3d --, No. W2003-01342-SC-R11-CD, at *5 (Tenn., Nashville, Feb. 8, 2006). Therefore, we agree with the State that this issue is waived.

Moreover, a panel of this court has held that criminal impersonation is not a lesser-included offense of identity theft. See State v. Ronald Bowman, No. W2003-02389-CCA-R3-CD, 2005 WL 94365, at *6 (Tenn. Crim. App., Jackson, Jan. 13, 2005) (Wade, P.J., dissenting) (concluding that fraudulent use of a driver's license is lesser-included offense of identity theft), perm. to appeal denied, (Tenn. May 23, 2005). Finally, the Defendant has failed to show that he did not waive this issue for tactical reasons. Page, 2005 WL 94365, at *6. Defendant is not entitled to relief on this issue.

## B. Prior Conviction

Again, the Defendant's argument is unclear. The Defendant relies on Tennessee Rule of Evidence 609 and presents the issue as the trial court committed reversible error by failing to provide the jury a limiting instruction addressing the MVHO order that contained eight prior driving convictions. However, it also appears that he is arguing that the trial court erroneously admitted this unduly prejudicial character evidence without engaging in the requisite analysis. Thus, his argument can best be interpreted as the trial court erred in admitting the order and, alternatively, if the order is deemed admissible, the trial court was required to give a limiting instruction concerning use of prior convictions.[3]

Additionally, the Defendant's reliance on Rule 609 is misplaced because Rule 609 pertains to attacking the credibility of a witness with a prior conviction. In the present case, the State sought to introduce the MVHO order as substantive evidence of the Defendant's guilt. Thus, the applicable rule in this situation is Tennessee Rule of Evidence 404.

Moreover, it appears from the record that the Defendant raised this issue for the first time in his motion for new trial. The Defendant has failed to include the transcript of the motion for new trial hearing in the record before this court. It is the duty of the appealing party to prepare an adequate record for appellate review. Tenn. R. App. P. 24(b). "When a party seeks appellate review there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal." Ballard, 855 S.W.2d at 560. Notwithstanding, we elect to address the Defendant's claim.

Recently, in State v. Charles E. Robinson, No. M2004-01163-CCA-R3-CD, 2005 WL 2008186 (Tenn. Crim. App., Nashville, Dec. 27, 2005), this Court addressed a similar situation, wherein the defendant was convicted of possession of a handgun by a convicted felon. Robinson, 2005 WL 2008186, at *2 (citing Tenn. Code Ann. § 39-17-1307(b)(1)(B)) (defining such offense as possession of a handgun by an individual convicted of a felony drug offense). Thus, the defendant's status as a convicted felon was an essential element of his offense. Id. at *3. The defendant argued that the trial court erred by admitting evidence that he had several felony drug

---

[3]In the argument section of the Defendant's brief on the issue, he states that "it was highly prejudicial for the jury to view any prior booking pictures[.]" This issue has not been briefed as required by our rules. Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b); see also Harvey v. State, 749 S.W.2d 478, 479 (Tenn. Crim. App.1987). This issue appears to be an afterthought, and we will treat it as waived.

convictions. <u>Id.</u> at *2. The Court concluded that the probative value of the evidence of the defendant's prior felony drug convictions outweighed any potential prejudicial effect. <u>Id.</u> at *3. In doing so, the Court reasoned:

> In <u>State v. Wingard</u>, 891 S.W.2d 628 (Tenn. Crim. App. 1994), this Court held that in the "unique situation" where a "prior conviction [i]s an element of the offense [charged], . . . the probative value of an essential element of the offense would almost always outweigh any potential prejudice under Rule 404(b), [and therefore the] specific nature of the offense w[ould be] admissible." <u>Id.</u> at 634. This holding was later limited to situations in which the defendant did not offer to stipulate to his or her status as a convicted felon. <u>See</u> <u>State v. James</u>, 81 S.W.3d 751, 763 n. 7 (Tenn. 2002) ("We note that in <u>Wingard</u>, there is no evidence that the defendant offered to stipulate to his prior convictions. Accordingly, we find that the decision in <u>Wingard</u> remains good law in those situations where the defendant does not offer to stipulate to his or her prior offenses.").

<u>Id.</u> at *2.

In the instant case, Tennessee Code Annotated § 55-10-616 provides, in pertinent part, "It is unlawful for any person to operate any motor vehicle in this state while the judgment or order of the court prohibiting the operation remains in effect." Tenn. Code Ann. § 55-10-616(a). Violation of a MVHO order is a material element of the indicted offense. Furthermore, there is no evidence in the record, nor does the Defendant assert, that he offered to stipulate to his status as an habitual offender. Accordingly, we conclude that the probative value of the order declaring the Defendant an habitual offender outweighs any potential prejudicial effect. The trial court properly admitted this evidence.

Thus, we must consider the Defendant's alternative argument that the trial court should have provided the jury with a limiting instruction regarding the order and the prior convictions described therein. In <u>Robinson</u>, "the trial court instructed the jurors that they could not consider those prior convictions as evidence of the defendant's propensity to commit the crime of possession of a handgun by a convicted felon." <u>Robinson</u>, 2005 WL 2008186, at *3. No such instruction was given in the present case.

In addressing whether a limiting instruction should have been given, the <u>Wingard</u> court stated:

> When the defense asked for jury instructions explaining that proof of the prior felony was admissible to establish the elements of the offense only and for no other purpose, the trial court denied the request. In our view, the evidence of a first degree murder conviction prejudiced the defendant--even if that prejudice was outweighed by the probative value. Under such circumstances, the trial courts should take pains to place the value of the evidence in proper context. Rule 105 of the Tennessee

Rules of Evidence provides, in part, as follows: "When evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court upon request shall restrict the evidence to its proper scope and instruct the jury accordingly." See, e.g., State v. Howell, 868 S.W.2d [238,] 255 [(Tenn. 1993)]; Laird v. State, 565 S.W.2d 38, 40 (Tenn. Crim. App. 1978); Lacey v. State, 506 S.W.2d 809 (Tenn. Crim. App. 1974); see also 1 C. Torcia, Wharton's Criminal Evidence, § 264 (14th ed. 1985). In our view, the jury should have been instructed that the prior conviction or convictions had been admitted into evidence for the sole purpose of establishing that the defendant had been convicted of a felony--an essential element of the offense--and for no other purpose. It would have been preferable for the jurors to have known that no inferences of guilt could have been drawn by the nature or gravity of the prior offenses.

Id.

In this case, the Defendant did not request a limiting instruction advising the jury that the references to the prior convictions were not to be considered as any evidence of the Defendant's guilt of the charges for which he was on trial. The issue was not raised during trial, but rather, was raised for the first time in the motion for new trial. "[C]ounsel must raise a contemporaneous objection to an incomplete jury charge[.]" State v. Eldridge, 951 S.W. 2d 775, 779 (Tenn. Crim. App. 1986) (citing State v. Haynes, 720 S.W. 2d 76 (Tenn. Crim. App. 1986)); see also Rhoden v. State, 816 S.W. 2d 56, 62-63 (Tenn. Crim. App. 1991) ("If a trial judge does not give a curative instruction sua sponte, the party who objects to the testimony must request such an instruction."). The Defendant also failed to request that the judgment be redacted to exclude any references to the prior convictions. "Objections must be timely and specific." Tenn. R. Evid. 103, Advisory Commission Comments. Therefore, to the extent that the Defendant argues on appeal that the jury should not have been exposed to the references of the prior convictions, the issue is waived. Relief is not available to a party who is responsible for, or fails to take action to prevent, an error. Tenn. R. App. P. 36(a).

**C. Defenses**

The Defendant argues that the trial court "failed to instruct the jury as to [his] defenses." The Defendant does not specify which defenses are applicable to his case. In his motion for new trial, the Defendant listed the following defenses:

a. That he complied with the directions of the Department [sic] of Tennessee, Department of Safety when applying for his driver's license.

b. That the [sic] appeared at the Driver's License office and submitted all documentation that was requested of him.

c. That State of Tennessee, Department of Safety, issued a valid driver's license.

d. That he had [sic] duly issued and valid driver's license at the time of his arrest.

e. That there were no restrictions or suspensions to the driver's license he had in his possession at the time of his arrest.

f. That a police officer is not a judicial entity and does not have the authority to suspend or revoke a valid driver's license.

g. That said duly issued driver's license issued by the State of Tennessee was never void, held for naught or suspended/cancelled/revoked by the State of Tennessee.

It appears from the record that the Defendant raised this issue for the first time in his motion for new trial. We again note that the Defendant has failed to include the transcript of the motion for new trial hearing in the record before this court. It is the duty of the appealing party to prepare an adequate record for appellate review. Tenn. R. App. P. 24(b). "When a party seeks appellate review there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal." Ballard, 855 S.W.2d at 560. Moreover, this issue has not been briefed as required by Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure, which provides, in relevant part, that:

> The brief of the appellant shall contain . . . [a]n argument, which may be preceded by a summary of argument, setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on[.]

Tenn. R. App. P. 27(a)(7); see also Harvey v. State, 749 S.W.2d 478, 479 (Tenn. Crim. App.1987). "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b).

In the present case, the Defendant is correct in his assertion that defenses "fairly raised by the proof" should be submitted to the jury. See Tenn. Code Ann. § 39-11-203. However, the Defendant does not provide this Court with any authority that his list constitutes "defenses" chargeable to a jury. We agree with the State that the Defendant's list "appears at most to constitute inferences arguable from the proof at trial." See generally Tenn. Code Ann. §§ 39-11-501 to -621; 7 Tennessee Practice, Tennessee Pattern Jury Instructions--CRIMINAL §§ 40.01-.18 (Comm. of the Tenn. Judicial Conference 9th ed. 2005). In sum, the Appellant has failed to comply with Rule 27 of the Tennessee Rules of Appellate Procedure. We also note that the Defendant made no requests for additional jury instructions. This issue is without merit.


## II. Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to support his conviction for identity theft. Specifically, he argues, "[T]he record is devoid of evidence that the defendant actions [sic]

preceding his arrest for [identity theft] was in any manner unreasonable or reckless much less criminal."

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

Identity theft is defined as knowingly transferring or using, without lawful authority, a means of identification of another person with the intent to commit any unlawful activity. Tenn. Code Ann. § 39-14-150(a) (2003). The Defendant admits that he relied upon the discharge paper of Robert Arron Wiley, Jr., in getting a driver's license, but he argues that he believed it was his discharge paper, he was unaware that a MVHO order had been entered against him, and he lacked sufficient education or knowledge to understand the conditions of reinstatement. In essence, he submits that the record does not contain any proof that he intended to commit any unlawful activity. The State argues that the jury could infer from the evidence that the Defendant intended to evade the MVHO order. There was proof at trial that, in order to circumvent the MVHO order, the Defendant used Robert Arron Wiley, Jr.'s name and social security number to obtain a driver's license. The jury chose not to accredit the Defendant's testimony, as was their prerogative. Viewed in the light most favorable to the State, we conclude that the evidence supports the Defendant's conviction for identity theft. See Bowman, 2005 WL 94365, at *2.

**III. Sentencing**

Finally, the Defendant argues that the trial court committed sentencing errors.[4] First, he titles the issue as "[t]he Court erred in submitting the presentence report and enhancement factors, which were not admitted into evidence at trial in violation of the Blakely Issue." However, the argument section on this issue does not address Blakely v. Washington, 542 U.S. 296 (2004); instead, he contends that the trial court failed to apply or properly weigh mitigating factors.[5]

The Blakely Court held that any fact that increases a sentence beyond the "relevant statutory maximum," defined as the maximum sentence that a judge may impose without making any additional findings of fact, must be submitted and proved to the jury beyond a reasonable doubt unless admitted by the defendant. Blakely, 542 U.S. at 301-02. Thus, adherence to Blakely requires that any enhancement factors, other than prior criminal history, can be applied only if found by a jury or admitted by the defendant. Id.

First, the Defendant's sentence was properly enhanced solely on his prior criminal history. See Tenn. Code Ann. § 40-35-114(2) (2003).[6] Sentencing enhancement based upon prior criminal history is not implicated under Blakely. Second, the Tennessee Supreme Court has just recently considered the impact of the Blakely ruling on Tennessee's sentencing scheme and has concluded that the Criminal Sentencing Reform Act of 1989, under which the Defendant was sentenced, does not violate a defendant's Sixth Amendment rights. See State v. Gomez, 163 S.W.3d 632, 661 (Tenn. 2005). Accordingly, the Defendant's argument on this basis has no merit.

Regarding mitigating factors, the Defendant contends:

[T]hat substantial grounds exist tending to excuse or justify the defendants [sic] criminal conduct, though failing to establish a defense; that the defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate to law motivated the criminal conduct.

---

[4] In the conclusion section of the Defendant's brief, he states that he "was denied his constitutional right pursuant to his 4th and 6th amendment rights to face his accuser, to be safe from unreasonable searches and seizures[.]" This issue has not been briefed. Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b); see also Harvey, 749 S.W.2d at 479. Again, this issue appears to be an afterthought, and we will treat it as waived.

[5] We note that the legislature has recently amended several provisions of the Criminal Sentencing Reform Act of 1989, said changes becoming effective June 7, 2005. However, the Defendant's crimes in this case, as well as his sentencing, predate the effective date of these amendments. Therefore, this case is not affected by the 2005 amendments, and the statutes cited in this opinion are those that were in effect at the time the instant crimes were committed.

[6] The Defendant's criminal history includes numerous driving convictions in addition to those necessary to establish his status as an habitual offender.

See Tenn. Code Ann. § 40-35-113(3), (11). Again, we note that this issue has not been briefed as required by Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure. See also Harvey, 749 S.W.2d at 479. "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b).

Moreover, the mitigating factors espoused by the Defendant were applicable only if his testimony was accepted. State v. John C. Walker, III, No. M2005-01432-CCA-RM-CD, 2005 WL 1798758, at *14 (Tenn. Crim. App., Nashville, July 28, 2005). The jury, by its verdict, implicitly rejected the Defendant's testimony. Id. The trial court found:

> The [D]efendant knew he shouldn't have been driving. He was driving in violation of an Habitual Motor Vehicle Offender order. The Court does recall under the facts, though, that he had a license issued to him. The jury believed that to be by subterfuge or fraud. The other mitigating factors are that he lacked sufficient education or knowledge to understand the conditions of reinstatement. The Court, again, has really heard no proof on that other than the proof presented at the trial, which the jury disregarded.

We conclude the trial court did not err by rejecting the proposed mitigating factors.

## IV. Plain Error

The Defendant has not argued that his dual convictions for driving while license cancelled, suspended, or revoked and the habitual motor offender offense violate double jeopardy principles. Typically under these circumstances, our analysis of an issue is waived. See Tenn. R. App. P. 13(b). Nevertheless, review of this issue is permitted if plain error exists.

Rule 52(b) of the Tennessee Rules of Criminal Procedure provides that "[a]n error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice." In order to find plain error, we must consider five factors:

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused [must not have waived] the issue for tactical reasons; and (e) consideration of the error [must be] necessary to do substantial justice.

State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (citations and quotations omitted). Taking these factors in sequence, the record clearly establishes that the Defendant was convicted of both driving while license cancelled, suspended, or revoked and violation of MVHO order. See Tenn. Code Ann. §§ 55-50-504, 55-10-616. Second, multiple convictions breach a clear and unequivocal rule of law. Third, a fundamental constitutional right of the Defendant, his Fifth

Amendment right to be free from double jeopardy, is affected. Fourth, the record is devoid of any evidence that the Defendant waived the issue for tactical reasons. Fifth, we consider violation of the Defendant's protection against double jeopardy to be sufficiently serious as to require our review in order to do substantial justice. Accordingly, we will review the trial court's error in this regard in spite of the Defendant's failure to raise it as an issue.

This Court has previously concluded that convictions for driving while license cancelled, suspended, or revoked and a habitual motor offender offense are the "same" under the double jeopardy principles if the evidence relied upon by the State to establish both crimes was the same. See State v. Green, 947 S.W.2d 186, 190 (Tenn. Crim. App. 1997) (citing Duchac v. State, 505 S.W.2d 237, 239) (Tenn. 1973)); State v. Morgan L. Ray, No. M2002-02910-CCA-R3-CD, 2003 WL 22888923, at *4 (Tenn. Crim. App., Nashville, Dec. 8, 2003). The Defendant's convictions for driving while license cancelled, suspended, or revoked and the habitual motor offender offense were based upon the same evidence. They both came about as a result of the events on June 10, 2003. Because of double jeopardy prohibitions, plain error requires us to vacate the judgment of conviction for driving while license suspended, cancelled, or revoked. We note the Defendant's effective sentence remains unchanged.

## CONCLUSION

Based upon the foregoing reasons and the record before this Court, we vacate the judgment of conviction for driving while license cancelled, suspended, or revoked. The Defendant's convictions and sentences for identity theft and violation of a MVHO order are affirmed.

_____
DAVID H. WELLES, JUDGE